## KIRKPATRICK vs. PESHINE and wife.

1. The jurisdiction of courts of equity over contracts and covenants is not confined to cases where an action at law can be maintained, but extends to cases where an action at law is not maintainable. Covenants controlling the enjoyment of land, though not binding at law, will be enforced in equity, provided the person into whose hands the land passes, has taken it with notice of the covenants.

2. An agreement under seal, made subsequent to a conveyance of a lot of land, that the vendee would build thereon, within a year, a residence to cost not less than $18,000, and would place the main front wall thereof twelve feet from the line of the street, and that the vendors, in case of any further conveyances of lots on that street, would stipulate and provide with the purchasers that the houses to be erected on such lots, between specified streets, should be so erected that the main front wall should be on a line twelve feet from the line of the street, will be enforced in equity as against a subsequent grantee, with notice. Equity will charge the conscience of the grantee with such agreement, though it neither creates an easement, nor runs with the land.

Kirkpatrick *v.* Peshine.

3. The vendee with whom such agreement was made, is entitled to the benefit of a covenant contained in the deed to such subsequent grantee, binding her, so far as her land is concerned; substantially to the observance of the agreement, notwithstanding the absence of any privity between them.

4. The erection of a bay window, one story high, built up from the foundation wall, and extending beyond the line of the twelve feet, is a violation of the agreement, and will be restrained.

5. The erection of a stone stoop, or steps, occupying the whole width of the twelve feet, is not an infringement of the agreement.

6. The court will not refuse to restrain the violation of such agreement, because the inconvenience resulting to the complainant will be slight. It must be clear that there is no appreciable, or at all events, no substantial damage from the breach, before the court will, upon the ground of smallness of damage, withhold its hand from enforcing the execution.

The bill states that, on or about the 4th of April, 1872, the complainant, being desirous of procuring an eligible site for a residence for himself and family, entered into negotiations with Francis Mackin, William H. McClane, and Anthony Q. Keasbey, for a lot of land then owned by them, situated on the southerly side of Lagrange street, between Pennsylvania avenue and Broad street, in Newark. That these negotiations resulted in the purchase, by him, from them, of the lot for the price of $16,000.

That the vendors also agreed to secure to him, for the benefit of his lot, a certain right or easement of light in, and prospect over a strip of land twelve feet wide, bordering on the southerly side of Lagrange street, between Pennsylvania avenue and Broad street; the complainant, at the same time, stipulating with them, that he would leave a strip of the lot purchased by him, twelve feet wide, free from obstruction, for the benefit of others who might build on the southerly side of Lagrange street.

That, on the 4th of April, 1872, the vendors, for the purpose of carrying out the negotiation and agreement, conveyed to him the lot, the dimensions of which were about forty feet front and rear, by about one hundred and forty feet deep; and on the 3d of May, 1872, executed with him an

agreement, under seal, dated on that day, and between him and them, by which, after reciting the conveyance, it was declared to be agreed, by and between the parties, that the complainant should build, upon the lot, within one year from that date, a private residence, to cost not less than $18,000, and would so place the house, that the main front wall thereof should be twelve feet from the line of Lagrange street; and it was further declared to be agreed, by and between the parties to the agreement, that the vendors, Messrs. Mackin, McClane, and Keasbey, in case of any further conveyances of lots on Lagrange street, would stipulate and provide, with the purchasers, that the houses to be erected on such lots throughout, between Broad street and Pennsylvania avenue, should be so erected that the main front wall should be on a line twelve feet from the line of Lagrange street.

The bill further states, that the complainant has paid the vendors the purchase money, and has performed his part of the agreement.

That, after he commenced the building of his house, Messrs. Mackin, McClane, and Keasbey conveyed to the defendant, Lizzie M. Peshine, a lot of land on the southerly side of Lagrange street, and between Broad street and Pennsylvania avenue, about twenty feet front on Lagrange street, by about one hundred feet in depth, on Broad street.

That the deed to Mrs. Peshine contains a covenant and condition, in the following words: "This conveyance is made subject to the express covenant and agreement on the part of said grantee, her heirs and assigns, that the dwelling-house to be erected upon said premises, shall be built of stone and brick, and that the same shall set back twelve feet from the line of said lot on Lagrange street."

That the complainant, as soon as he heard that Messrs. Mackin, McClane, and Keasbey were negotiating with defendants for the sale of a lot on Lagrange street, between Broad street and Pennsylvania avenue, saw them, or one of them, and reminded them, or one of them, of their agreement with

him, and requested them to comply with its terms, and protect his interests by inserting a clause or covenant in their deed, that the house to be built on the lot should set back on a line twelve feet from Lagrange street.

That before the delivery of the deed to Mrs. Peshine, Messrs. Mackin, McClane, and Keasbey, or one of them, informed her of their agreement with the complainant, and that, on that account, the deed to her would contain a clause or covenant, that any dwelling-house to be erected on the lot to be conveyed to her, should set back twelve feet from the line of Lagrange street. That she accepted her deed with full knowledge of complainant's rights in the premises.

That pending the negotiations between the defendants and Messrs. Mackin, McClane, and Keasbey, for the purchase and sale of the lot to Mrs. Peshine, or soon thereafter, and before the commencement of their building on the lot, the defendant, Francis S. Peshine, called on the complainant to ascertain if the complainant would consent to placing a dwelling-house, or a part of it, on the strip of twelve feet wide, and the complainant refused to give his consent, and explained the reasons for his refusal.

That the defendants have begun the building of a dwelling-house on the lot conveyed to Mrs. Peshine, and have proceeded so far with it, that the foundation walls are above the level of the streets, and that the larger part of the dwelling-house, fronting on Lagrange street, extends as much as three feet over the twelve feet reserved.

That the erection is an injury to the complainant, and tends not only to depreciate the value of his house and lot, but, by obstructing the view and outlook of his house, renders his residence much less desirable than it otherwise would be.

The bill prays an injunction to restrain the defendants from erecting their dwelling-house on any part of the twelve feet reserved, and to require them to remove the erection already begun.

The answer, protesting that the bill does not show that the complainant has any easement or servitude in the land conveyed to Mrs. Peshine, and that the complainant, by his own showing, has no standing in court, admits the purchase, by complainant, of his lot, as stated in the bill, but denies knowledge or information, except from the bill, as to the alleged agreement, or any agreement between the complainant and Messrs. Mackin, McClane, and Keasbey, for a certain right or easement of light, air, and prospect, for the benefit of the complainant's lot; and the defendants submit that the alleged agreement, subsequent to the conveyance to the complainant of his lot, is not sufficient to create an easement in favor of the complainant, in the lot conveyed to Mrs. Peshine, nor any right or interest to him therein.

The answer admits that the complainant has located his house as he alleges. It admits the conveyance to Mrs. Peshine, and that the deed contains the covenant stated in the bill, in that behalf; and that the defendants have begun to build a dwelling-house on Mrs. Peshine's lot. But it alleges that the house does not front, and is not intended to front, at all, on Lagrange street, but fronts entirely on Broad street; that the main front wall is now about sixteen feet in height, above the ground, and that no part is now, or is intended to be within twelve feet of the line of Lagrange street; that the house, when finished, will, and so far as it has progressed, does set back twelve feet from the line of the lot on Lagrange street, within the meaning of the letter and spirit of the deed of conveyance to Mrs. Peshine. That it is contemplated to build a bay window to the house, projecting from the wall thereof, on the Lagrange street side, to within about eight feet of the line of Lagrange street, of one story only, in height, and that no part thereof will be a part of the wall of the house; and that, after the bay window and house are completed, the house will still be set back twelve feet from the line of Lagrange street. That the stoop, or fronts steps of the complainant's house, extends about twelve feet in front of his house, and, as the defendants believe, to

the line of the street, or nearly so; and that the stoop is a much greater obstruction to the light, air, and prospect of the adjacent lots in Lagrange street, and more injurious to the value of the lots than the bay window can possibly be. That the complainant's house is more than two hundred feet distant from the house now being built by the defendants, and that no obstruction of light, air, prospect, or view can result to the complainant from the bay window; nor will his property, or that of any other person, be injured, or damaged, or diminished in value, to any extent whatever, by the bay window. That the defendants' house will be a first-class brick and stone house, costing not less than $18,000; that the bay window will be an ornamental addition thereto, and that the house will be an improvement on Lagrange street, and will not be the cause of any depreciation in the value of adjoining property, or render any house now built, or hereafter to be built on Lagrange street, less desirable, or be an obstruction to the light, air, or view thereof, or decrease the value thereof.

The defendants deny that the larger part of their house fronting on Lagrange street, will extend as much as three feet over the twelve feet from the southerly side of Lagrange street, or that the larger part will at all extend over the line, or that any part of the house will extend over the line, except the bay window, which they are advised and submit they have a right to project from the north side of the house. And they deny that any privity exists between the complainant and Messrs. Mackin, McClane, and Keasbey and them, which authorizes the complainant, in this court, to call on the defendants to refrain from violating the stipulations of the deed to Mrs. Peshine, or the agreement set up by the complainant, though they deny that any of the stipulations have been violated by them, or either of them.

On the filing of the bill, an order to show cause why an injunction should not issue, pursuant to the prayer of the bill, was made. The cause was heard, upon the argument of the order to show cause, on the bill, answer, and affidavits.

Kirkpatrick *v.* Peshine.

*Mr. T. N. McCarter,* for complainant.

*Mr. F. H. Teese,* for defendants.

THE CHANCELLOR.

The questions presented in this case are, whether the defendants are bound by the covenant between the complainant and his vendors (who are their vendors also); whether the complainant may enforce the performance of the covenant in the deed to Mrs. Peshine; and whether, if those questions are determined in the affirmative, the defendants are disregarding the obligation resting upon them, and violating the rights of the complainant. In other words, it is insisted, on the part of the defendants, that they owe no duty to the complainant, that no privity exists between them and him, whether under the covenant between him and his vendors, or that contained in the deed to Mrs. Peshine; and they deny that they have violated, or are about to violate, either the one or the other.

The vendors of the complainant were, at the time of making their covenant with him, the owners of the whole of the land between the complainant's lot and Broad street, including the land subsequently sold and conveyed to Mrs. Peshine. That covenant was made, on their part, upon a sufficient and valuable consideration, the agreement of the complainant to erect a costly dwelling-house for his own residence upon the property sold to him, and to so place it on his lot as practically to widen the narrow but eligible street known as Lagrange street, between Pennsylvania avenue and Broad street, and to give it the advantages of what is known as a "place;" an agreement made by the complainant, in consideration, and only in consideration, of the agreement on the part of his vendors, that they would secure to him the benefit of such location of his house, by putting their grantees of the remaining land under obligation, that the houses to be erected on the lots to be conveyed to them should be so erected as to conform to the line thus established. Such an

agreement was necessary to secure the complainant against irreparable injury to arise from so locating his house ; for, to set his house back, leaving the owners of the remaining lots under no restriction as to the location of the houses on their lots, would be to incur the risk of irreparable damage to his property, by reason of such location of his house, it being obvious, that should the owners of the property between his lot and Broad street build their houses in advance of his, further towards or on the line of Lagrange street, his property would be, *ipso facto*, damaged. The arrangement was for their mutual advantage. It enhanced the value of their respective properties.

The existence of the covenant was known to the defendants when Mrs. Peshine took her deed, and she took her conveyance subject to the restriction and obligation imposed by it. The statements in the bill, on the subject of notice to the defendants, are not denied or disputed by the answer.

The agreement between Messrs. Mackin, McClane, and Keasbey with the complainant, is one to which equity will give effect as against a subsequent grantee, with notice. It is one of that class of cases in which equity will charge the conscience of a grantee of land with an agreement relating to the land, although the agreement neither creates an easement nor runs with the land. The jurisdiction of courts of equity over contracts and covenants, is not confined to cases where an action at law can be maintained, but extends to cases where an action at law is not maintainable. Covenants controlling the enjoyment of land, though not binding at law, will be enforced in equity, provided the person into whose hands the land passes, has taken it with notice of the covenants. *Kerr on Injunctions* 530 ; *Sugden on Vendors* 596. "The question," said Lord Cottenham, in *Tulk* v. *Moxhay,* 2 *Ph.* 774, " is not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased."

"Reason and justice," said Lord Justice Knight Bruce, in

*DeMattos* v. *Gibson*, 4 *DeG. & J.* 282, " seem to prescribe, that at least, as a general rule, where a man, by gift or purchase, acquires property from another, with knowledge of a previous contract, lawfully, and for a valuable consideration, made by him with a third person, to use and employ the property for a particular purpose in a specified manner, the acquirer shall not, to the material damage of the third person, in opposition to the contract, and inconsistently with it, use the property in a manner not allowable to the giver or seller." See also *Dietrichsen* v. *Cabburn*, 2 *Ph.* 52; *Child* v. *Douglas*, 1 *Kay* 560; *Gilbert* v. *Peteler*, 38 *Barb.* 488, 514; *Parker* v. *Nightingale*, 6 *Allen* 341; *Tallmadge* v. *East River Bank*, 26 *N. Y.* 105; *Hills* v. *Miller*, 3 *Paige* 254; *Barrow* v. *Richard*, 8 *Paige* 351; *Seymour* v. *McDonald*, 4 *Sandf. Ch.* 502; *Brewer* v. *Marshall*, 4 *C. E. Green* 537.

Not only was there, in the present case, notice of the covenant which had been entered into between the complainant and his vendors, but there was, on the part of Mrs. Peshine, a covenant contained in her deed, binding her, so far as her land was concerned, substantially to the observance of the agreement; and the complainant is entitled to the benefit of the covenant. The defendants are clearly bound by the agreement made by Messrs. Mackin, McClane, and Keasbey with the complainant.

The remaining question, whether the defendants have violated the agreement, may be readily disposed of. It appears to me, free from difficulty. The defendants' lot is about twenty-two feet front on Lagrange street. Their building, which is to be of brick and stone, and of three stories in height, is to occupy the whole width of the lot. When the bill in this cause was filed, their plan, it is admitted, contemplated, on the Lagrange street end, what is termed in the answer " a bay window" from the foundation to the roof. Since the order to show cause was served upon the defendants, the plan has, it is alleged, been modified, so that the so called bay window shall not extend, in height, above the first story. This " bay window " is not a projection from the wall of the

house, but itself constitutes and is part of the wall. It is, indeed, all of the wall on the Lagrange street end, except eighteen inches at each corner. For eighteen inches from each corner of the building, on that end, the wall is at right angles to the front and rear walls of the house ; the rest of the wall is a three-sided projection, outside of the inner line of the strip of twelve feet, and occupying, at its widest part, four of the reserved twelve feet. It has a stone foundation, part of the foundation of the house. It is what is known as an " octagon end," by whatever other name it may be called, and is a clear violation of the agreement. That it is now proposed to build it no higher than the top of the first story, does not change its character, nor render it free from objection. It is impossible to resist the conclusion, that to permit its construction, would be to allow the defendants to frustrate the intention of the parties to the agreement.

In *Child* v. *Douglas,* 1 *Kay* 560, a case somewhat similar to the present, it was held, that building a wall or fence, of fifteen feet high, across a strip on which the defendant was bound by covenant not to erect a building, would be a violation of the covenant.

The defendants urge that, in the present case, the complainant, himself, has not conformed to his agreement; that in the erection of his own house, he violated it by placing his stoop —a platform and steps—from the house to the street, for the whole width of the twelve feet. I do not think so. The agreement was, that the main front wall of his house should be twelve feet from the line of Lagrange street, and it is not denied that his main front wall is in conformity with his agreement. The object in reserving the twelve feet, and in making the stipulation that the houses on the other lots should be on a line of twelve feet from the line of Lagrange street, is evident. It was, that the complainant, and those who should build on the other lots, should have the advantage of the twelve feet for ventilation, light and prospect, and should have the benefit to arise to their property from placing their houses on the twelve feet line. The platform and steps

are not an infringment either of the terms or spirit of the agreement.

It is further insisted by the defendants, that the inconvenience to the complainant, if the structure complained of in the bill be permitted, will be but slight, and that therefore, this court ought not to interfere, by its injunction, to restrain the defendants in the premises.

The rule on this head is correctly stated in *Kerr on Injunctions* 532. "There may be cases in which the damage to arise from the breach of the covenant, would be inappreciable, and in which the court would refuse to interfere. But the case must be free from all possibility of doubt. It must be clear that there is no appreciable, or at all events no substantial damage, before the court will, upon the ground of smallness of damage, withhold its hand from enforcing the execution. The mere fact that a breach of the covenant is intended, is a sufficient ground for the interference of the court by injunction. A covenantee has the right to have the actual enjoyment of the property, *modo et forma*, as stipulated for by him. It is no answer to say that the act complained of will inflict no injury on him, or will be even beneficial to him. It is for the plaintiff to judge whether the agreement shall be kept, as far as he is concerned, or whether he shall permit it to be violated. It is not necessary that he should show that any damage has been done. It being established that the acts of the defendant are a violation of the contract, the court will protect the complainant in the enjoyment of the right he has purchased.

The order to show cause is made absolute.