Civil action. From a judgment sustaining motion to nonsuit, the plaintiff appealed.
This is stated to be an action to remove a cloud from the plaintiff's title to part of the courthouse square in Guilford County, but as the alleged cloud was placed thereon by the act of plaintiff, we prefer to treat it as a proceeding under section 1589, Revisal, to determine the title to the property described in the complaint growing out of the adverse claims of the defendants.
The courthouse of Guilford County was burned in 1872, and by virtue of chapter 16, Laws 1872, the commissioners proceeded to acquire additional ground adjacent to the old site for the purpose, as set forth in the act (section 6), of enlarging the public square, and authority was conferred by said act upon the county commissioners "to buy, sell, and exchange real estate surrounding said courthouse, upon such terms as they may deem just and proper and for the best interests of the county." The courthouse was rebuilt on the old site and the commissioners proceeded to acquire land surrounding it for the public square.
Thereupon, on 5 February, 1873, the commissioners acquired a frontage on West Market Street of 23 feet and 8 inches from W. C. Porter, under a deed in fee containing this clause: "Provided, however, and it is understood and agreed, that the said lot herein conveyed shall be used by the said parties of the second part as a public square and be forever *Page 413 
kept open for that purpose, and should any building or structure of any character inconsistent with said purpose be erected thereon, the said party of the first part, his heirs or assigns, may enter upon the land herein conveyed and abate and remove any and all buildings or parts of buildings inconsistent with its use as aforesaid."
On the same date the commissioners, by exchange for other land, acquired from W. A. Caldwell an additional 20 feet on West Market Street, under a similar deed containing a similar proviso. On 3 February, 1873, the commissioners acquired, by exchange for other land, 24 1/2 feet frontage on Elm Street from Waller R. Staples under a deed of exchange in fee, with full covenant of warranty.
On the same date the commissioners, in exchange for his land, conveyed to Waller R. Staples a strip of land on N. Elm Street immediately adjacent to that acquired from Staples, by deed in fee containing the following covenant immediately following the habendum: "The said party of the first part (the board of commissioners) doth further covenant and agree with the said party of the second part that the lot or parcel of ground lying between said brick building and the courthouse, on which formerly stood the office of C. P. Mendenhall, shall forever be kept open as vacant and unoccupied ground, except such (368) obstruction as may be made by shade trees thereon planted, and they shall not be planted within 20 feet of said brick building, and then only in such a manner as will leave free ingress and egress to said brick building on the south side thereof."
The purpose of this action upon the part of the plaintiffs is to get rid of these restrictions upon the use of the property so they can sell it to their coplaintiff, the Jefferson Insurance Company, for purpose of erecting thereon a large structure.
It is contended by the plaintiff that the provision in said deeds is void:
First. Because the condition is repugnant to the estate in fee simple already granted, and that such condition should be rejected and treated as surplusage. This position is untenable. If such a construction of a deed ever obtained in this State, it does not now. The narrow rules of the common law in construing deeds and other instruments, as expounded inHafner v. Irwin, 20 N.C. 570, taken from Coke and Blackstone, have given way to a more enlightened and broader doctrine. The whole of a deed is now so construed as to effectuate the plainly expressed intention of the grantor, and to carry out the manifest purposes of the parties. The technicalities of the common law will not be permitted to override the intention so expressed. 1 Dev. on Deeds, sec. 215; Triplett v. Williams,149 N.C. 394; Beacon v. Amos, 161 N.C. 365.
Second. Because the commissioners had no power to accept deeds containing such restrictions. This position is likewise untenable. The case *Page 414 
of School Comrs. v. Kesler, 67 N.C. 443, relied on by plaintiffs, does not sustain their contention, assuming that it is not practically overruled by Hall v. Turner, 110 N.C. 305. The decision in the Kesler case is based upon the theory that the condition or qualification contained in the deed accepted by the school committee is inconsistent with and repugnant to the very object and purpose for which the deed was made and the property acquired.
In acquiring the property, the commissioners of Guilford were acting under a statute expressly authorizing them "to buy, sell, and exchange real estate surrounding said courthouse upon such terms as they may deem just and proper, and for the best interests of the county." They were not acquiring property as a site for a courthouse building, but solely, as recognized in the statute, "for the purpose of preventing the erection of any building near the courthouse, and thereby lessen the danger of fire" and "to enlarge the public square."
The county had a site for the building, conveyed to it by Solomon Hopkins in 1858. The courthouse was again erected on that site, and the purpose of the act was, not only to provide a new courthouse, (369) but to provide a public open space or square around it for its protection as well as public convenience. And it was for this latter purpose only that they acquired the land subject to these restrictions.
Instead of such restrictions being at variance with the purpose for which the property was acquired, they are wholly consistent with and in furtherance of it.
The grantee as well as the grantor is bound by the stipulations or agreement in these deeds, there being no suggestion of fraud or collusion (Herring v. Lumber Co., 163 N.C. 483), and it would be inequitable and unjust to set aside the restrictive agreements in them without setting aside the entire deed — something the plaintiff evidently does not desire.
The case of Edwards v. Goldsboro, 141 N.C. 60, in our opinion, has no application to the facts of this case. The judgment in that case is based upon an evident fraud on the public, because the plaintiff had subscribed and paid to the city a sum of money for the purpose and with the intent of inducing the city officials to locate its city hall and market house near the plaintiff's property with the view of enhancing its value. The contract was illegal and against public policy. The parties, being in pari delicto, the Court refused to enforce the contract. We fail to see any similarity between the two cases.
In taking these deeds, the commissioners were acting directly in line with the purposes of the statute, and every restriction contained in them *Page 415 
is consistent with the purpose to provide an open space around the courthouse building.
The purpose of the statute, to provide an open space around the courthouse, manifestly could not be executed without acquiring this land, as it adjoined the courthouse site. No other land would answer the purpose. The commissioners were compelled to take that of these adjacent owners, and they had to acquire it on the best terms they could. Therefore, the statute conferred upon the commissioners large discretionary powers. The commissioners desired an open space all around the new courthouse for its protection. These grantors desired it for the benefit of their remaining property, so they would not be completely shut in. These restrictions and agreements, therefore, met the common desires, purposes, and interests of all parties. We see nothing in the transaction contrary to any public policy or contra bonos mores.
It is unnecessary to consider the argument that these clauses in the deeds are conditions subsequent, and if void the estate would vest in the grantee freed from the conditions. As they are not void, it is immaterial what name is given them. A somewhat similar stipulation in a deed is construed in Church v. Bragaw, 144 N.C. 126, not to be a condition subsequent, but rather as a covenant or a restrictive clause, to be enforced by a resort to the equitable power of the court for the (370) purpose of restraining its violation, citing Graves v. Deterling,120 N.Y. 455; Woodruff v. Woodruff, 44 N.J. Eq., 349.
It is again contended that a court of equity will not enforce such an agreement by injunction.
No overt act of violation has yet been committed, but it appears that it is the purpose of the insurance company, if it acquires the entire courthouse site and square, to occupy it all with a building, leaving open, according to the terms of purchase, only an alleyway on the west of 18 1/2 feet, an alleyway on the north and also to Gaston Street.
The plaintiff contends that this alleyway is sufficient for defendants' needs and affords them access to their own buildings, and, therefore, equity will not enjoin.
It seems to be well settled that such restrictive covenants in deeds and other instruments limiting the use of land in a specified manner, or prescribing a particular use, which create equitable servitudes on the land, will be specifically enforced in equity by injunction. Busmeyer v.Jablosky, 28 A. and E. Anno. Cases, p. 1104, and cases cited.
In Church v. Bragaw, supra, the right to injunctive relief to compel the observance of such covenants or restrictive clauses is clearly recognized.
Mr. Pomeroy says: "The injunction in this class of cases is granted almost as a matter of course upon a breach of the covenant." 4 Pomeroy *Page 416 
Eq., p. 2672. And again he says (sec. 689): "On the same principle, if the owner of land enters into a covenant concerning the land, concerning its use, subjecting it to easements or personal servitudes, and the like, and the land is afterwards conveyed or sold to one who has notice of the covenant, the grantee or purchaser will take the premises bound by the covenant, and will be compelled in equity either to specifically execute it or will be restrained from violating it; and it makes no difference whatever, with respect to this liability in equity, whether the covenant is or is not one which in law runs with the land." Hodge v. Sloan,107 N.Y., 246; Post v. Weil, 115 N.Y. 371.
The easements reserved in these deeds are necessary for the full enjoyment of defendants' property, occupied by them. They add greatly to its value, and doubtless they and their predecessors would not have parted with a part of their land to the county without reserving such rights. It was the purpose of making a public square in front of them that they sold a portion of their land to the county. No court will compel them to part with these valuable rights in exchange for the privilege of using an 18-foot alley. It is not for the Court to say that they should be content with less than what their title deeds give them in order that the county may have more.
(371) When the restriction is still of substantial value to the dominant estate, equity will enforce it and not require the owner thereof to be content with less than his bargain gives him. It is not for his adversary to say that he has more than he needs, and therefore he shall have less, so that his adversary may have back a part of that with which he has parted. Landell v. Hamilton, 175 Pa. St., 327; Schworerv. Boylston Market Assn., 99 Mass. 295; Kirkpatrick v. Peshine,24 N.J. Eq., 206, 216; 5 Pom. Eq., secs. 279-281.
In the Massachusetts case the easement was on an open passage-way or court for light, view, and access. The defendant was preparing to build over the passage-way a building, leaving a space of 15 feet in height beneath the building. The Court declared that the intention was that there should be no building at all put thereon, and declined to accept the defendant's argument that the plaintiff would have all in reason and equity that he should have. See, also, 27 Am. Dec., pp. 80 and 83, and notes.
In the New Jersey Equity case, at page 216, the rule is very clearly stated. Where the easement is for light and view as well as for access, and especially where the provision is for an open court or square, the courts with entire uniformity lend their aid to protect such rights, because it necessarily appears that the existence and continuation of such rights is of substantial value to the owner of the land, and they decline to "rob Peter to pay Paul." *Page 417 
The quotation from the Court of Appeals of New York with which the plaintiffs conclude their brief is from a case reported in 104 N.E. at page 631. In that case the Court of Appeals notes the cases where equity will lend its aid and when it will withhold it. In the course of the opinion the Court cites, as an instance where the aid of the court of equity will be forthcoming, the case of Zipp v. Barker, which was a case where the provision was for an easement of light, view, and access.
In Kerr on Injunctions, p. 532, it is said: "There may be cases in which the damage to arise from the breach of the covenant would be inappreciable, and in which the Court would refuse to interfere. But the case must be free from all possibility of doubt. It must be clear that there is no appreciable, or at all events no substantial damage, before the Court will, upon the ground of smallness of damage, withhold its hand from enforcing the execution. The mere fact that a breach of covenant is intended is a sufficient ground for the interference of the Court by injunction. A covenantee has the right to have the actual enjoyment of the property, modo et forma, as stipulated for by him. It is no answer to say that the act complained of will inflict no injury on him, or will be even beneficial to him. It is for the plaintiff to judge whether the agreement shall be kept as far as he is concerned, or whether he shall permit it to be violated. It is not necessary that (372) he should show that any damage has been done. It being established that the acts of the defendant are a violation of the contract, the Court will protect the complainant in the enjoyment of the right he has purchased."
This extract from Kerr is quoted with approval by the Supreme Court of New Jersey in Kirkpatrick v. Peshine, supra.
Who can say that the damage that will be suffered by these defendants will be inappreciable? We know of no principle of law or equity that will compel them to surrender their valuable easements of light, view, open space, and access, reserved in their deeds, in exchange for a narrow and dark alleyway between their modest buildings and a great modern sky-scraper.
We are of opinion that the defendants are entitled to have their easements preserved and protected by a decree of the court.
As this is a proceding to settle the title to this property, under the statute, the nonsuit is set aside and the cause is remanded to the Superior Court of Guilford County with instructions to enter a decree for defendants, adjudging the title to said easements in accordance with this opinion.
All the costs of Superior Court, as well as of this Court, will be taxed against the plaintiffs.
Remanded. *Page 418 
 Cited: Guilford County v. Porter, 170 N.C. 310 S.C.; Guilford v.Porter, 171 N.C. 359 S.c.; Whichard v. Whitehurst, 181 N.C. 81 (1c);Shephard v. Horton, 188 N.C. 788 (1c); Peel v. Peel, 196 N.C. 783 (1c);Realty Co. v. Barnes, 197 N.C. 7 (2c).