## ISRAEL ROBINSON *v.* THE MISSISQUOI R. R. CO., W. C. SMITH AND OTHERS.

### [In Chancery.]

*Deed, Construction of. Granting part. Habendum. Fee.*
*Easement. Railroad. Land Damages. Statute*
*of Limitations.*

1. In construing a deed every word and every clause, so far as possible, should be given some force and meaning; and where it is doubtful what the construction should be, resort may be had to the circumstances; thus, where the language in the granting part and in the *habendum* was appropriate to convey a fee, and to the following clause in the description, "being a strip of land four rods

in width across my land, and being the same land now occupied by the St. Albans & Richford Plank Road Co. for their road," was added the clause, "*for the use of a plank road,*" it *was held* that the last clause was a limitation upon the grant, and that only an easement was conveyed.

2. STATUTE OF LIMITATIONS. The lien which an owner has for land damages on land taken by a railroad for its use, is not barred by the Statute of Limitations, if at all, until fifteen years have elapsed, if such owner has clearly evinced an intention to hold the title until the damages are paid.

3. INTEREST. When the finding of the master is equivocal as to the allowance of interest, the orator will not be allowed more than he claimed by his bill.

4. AMENDMENT. Nor in such case should he be allowed to amend his bill in this respect.

BILL IN CHANCERY. Heard on bill, answer, replication, and a special master's report, September Term, 1886, TAFT, Chancellor. Bill *pro forma* dismissed.

The suit was brought to recover land damages on land taken by the defendant railroad, and in default of payment for a foreclosure. The prayer of the bill was that the defendants be ordered to pay the damages, and in default of payment that they be perpetually enjoined from operating their railroad over and across the orator's farm. On February 26, 1858, the orator was the owner of a farm in Swanton, containing about 170 acres, and on which day he conveyed by deed a strip of land through said farm to the St. Albans & Richford Plank Road Co., a corporation duly chartered, of which deed the following is a copy:

"Know all men by these presents, that I Israel Robinson of Swanton in the County of Franklin and State of Vermont for the consideration of forty dollars paid to my satisfaction by the St. Albans & Richford Plank Road Co., a corporation created by the Legislature of the State of Vermont have sold and quit-claimed and do hereby freely release quit-claim and transfer unto the St. Albans and Richford Plank Road Co., their successors and assigns, forever all my right, title and interest, in and to the following land in Swanton described as follows, viz., being a strip of land four rods in width across my land and being the same land now occupied by the St. Albans and Richford Plank Road Co. for their road for the use of a plank road. To have and to hold said premises with all the privileges and appurtenances thereto belonging to the said

St. Albans & Richford Plank Road Co., their successors and assigns forever. In witness whereof I hereto set my hand and seal this 26th day of Feb. 1858." (Signed, sealed, etc.)

(As to the punctuation of the deed, *see* the opinion of the court.)

The master found that on or about said February 26th, the said road company constructed a plank road "through said farm, and took for the purposes of said road a strip of land four rods wide," etc. ; that said company occupied said strip of land for a plank road until about July 1, 1870, when said Plank Road Co. conveyed all of its interest in the said strip of land to the defendant, the Missisquoi R. R. Co. ; that said railroad company took possession of said strip of land at once, and constructed thereon their railroad, and operated the same over and upon said strip of land until November, 1887 ; that the Missisquoi R. R. Co., in November, 1870, was mortgaged to W. C. Smith, B. P. Cheney, and Wm. Stevens, trustees ; that said trustees, under an order of the Court of Chancery, went into possession of said railroad and said strip of land, claiming title under said mortgage ; that said trustees, or some of them, have been in possession ever since some time in November, 1877, operating said railroad upon said strip of land. The orator objected to the construction of the railroad, and claimed damages by reason thereof. On August 29, 1876, S. P. Carpenter and E. A. Smith, a committee on land damages, duly appointed by said railroad company, and authorized to act for said railroad company in respect to said damages, agreed with said Robinson upon the damages sustained by him on account of the construction of the railroad over said strip of land, and the damages were agreed on at $300 ; but the trustees were not parties to the agreement, and it did not appear that they knew of the same until they came into possession. The committee gave the orator the following writing :

" St. Albans, Aug. 29th, 1876.

" JOHN W. NEWTON, Treas.

" Dear Sir : We have this day agreed with Israel Robinson

of Swanton to allow him $300 for damages by reason of the location of our road upon the line of the plank road through his farm, which sum you are hereby authorized to pay.

" SILAS P. CARPENTER,

E. A. SMITH,

Committee on land damages."

The master found as to interest :

" And the parties before me agreed that the actual damages to said farm and to said Robinson by reason of constructing said railroad over said strip of land was $300, and that if said trustees were required to pay said damages, or the agreed damages, they should pay interest from the time that said R. R. Co. would be legally bound to pay interest.

" If the orator is entitled to interest from the time said M. R. R. Co. took the exclusive possession of said strip of land, and commenced operating their said railroad over said land, then I find said interest to September 20, 1886, to be $270, making the interest and damages at that date $570. If the orator is entitled to interest on the damages only from the time the damages were agreed upon as aforesaid, then I find said interest to September 20, 1886, to be $181.50, making the interest and damages at that date $481.50."

The master also found that the farm was damaged by the construction of the railroad.

*M. Buck & Son*, for the orator.

If the defendant trustees are not bound by the agreement made by the committee on land damages on the ground that they are not parties to it, then they can derive no benefit from it. *Adams* v. *R. R. Co.*, 57 Vt. 240 ; *Kittell* v. *R. R. Co.*, 56 Vt. 96: The trustees took possession of the railroad, and operated it over the orator's land subject to his lien for his actual damages caused by the original taking. The words, " for the use of a plank road," used in the deed, limit the interest granted to the use of the land for a particular purpose. General terms will yield to the specific. *Wheelock* v. *Moulton*, 15 Vt. 519. When printed blanks are used phrases written in

have the preference. 2 Par. Cont. 29. The deed only con-
veyed an easement. 2 Wash. R. P. s. 59. But the finding of
the master that the farm was damaged brings the case within
the decision of *Brainard* v. *R. R. Co.*, 48 Vt. 107. It was a
taking of land within the purview of the constitution. *Winn*
v. *Rutland*, 52 Vt. 494; Cooley Con. Lim. 546, 589. The
orator is entitled to interest from the time the defendants took
possession. The orator's lien continues fifteen years. The
Statute of Limitations is not a bar. *Kittell* v. *R. R. Co.*, 56
Vt. 96.

*Noble & Smith*, for the defendants.

The principal question is, What estate did the orator's deed
in 1858 pass to the Plank Road Co.? It conveyed a fee. The
first clause of the granting part, " their successors and assigns
forever, all my right," etc., is absolute.

In the *habendum* is the clause, " said company, their suc-
cessors," etc. The two concur in describing an absolute
estate. The words, " their successors and assigns forever,"
carry the fee as much as do the words " heirs," etc., in a deed
to an individual. The words, " for the use of a plank road,"
are words of description and not of limitation. They made
the description complete. If the language is ambiguous, it
should be construed most strongly against the grantor.
*Adams* v. *Warner*, 23 Vt. 411. This is a deed poll. The
language is that of the grantor alone; hence special force
should be given to this rule. The rule includes all exceptions
and conditions. *Mills* v. *Catlin*, 27 Vt. 28. Effect should
be given to all the phrases and language of the deed. *Cush-
man* v. *Ins. Co.*, 34 Me. 487; 2 Par. Cont. s. 5. The office
of the *habendum* is to determine what estate is granted.
1 Jones Mort. s. 67. The words, " for the use of a plank
road," in connection with the words preceding, simply define
the extent of land taken. The trustees stand as innocent
·grantees. The Plank Road Co. had legal capacity to take the
title in fee. *Page* v. *Heineberg*, 40 Vt. 81. The Statute of

Limitations is a complete defence. R. L., s. 3371; 1 Red. R. R., pp. 336, 351. If the case is subject to the rule laid down in *Kittell* v. *R. R. Co.*, 56 Vt. 96, and in *Adams* v. *R. R. Co.*, 57 Vt. 240, then we claim to come within the exception stated in the latter case, viz., " unless the owner has done that which in law precludes him from asking its enforcement." Section 951, R. L., does not apply. This suit is brought for $300 and interest, and not for the recovery of lands.

Again, the award in this case was made in 1876. The orator's suit was brought to the April Term, 1885. The railroad company constructed its railroad over the land in July, 1870. " Equity aids the vigilant; not those who slumber over their rights." In some cases courts of equity deny relief on the ground of acquiescence, though a less period of time than that prescribed by the Statute of Limitations has run. Pom. Eq. Jur. ss. 7, 9.

The orator accepted the order in settlement of his claim, and this extinguished his lien, if he ever had one.

The opinion of the court was delivered by

Ross, J. I. The first contention is whether the deed from the orator of February 26, 1858, to the St. Albans and Richford Plank Road Co. conveys the fee, or an easement, in the premises described. The language used in the granting part of the deed and in the *habendum* is appropriate, and that commonly used to convey the fee. The first part of the description of the premises, " being a strip of land four rods in width across my land, and being the same land now occupied by the St. Albans and Richforn Plank Road Co. for their road," is appropriate to an absolute grant; but the remaining clause, " for the use of a plank road," unless properly descriptive of the premises, is such language as would naturally be used to limit or qualify the grant, to change it from a fee to an easement. The description of the premises granted is complete without this clause. This clause in the original deed is separ-

ated from the former part of the description by a mark of some kind, designed, evidently, either for a comma or a dash. This clause can have no force as descriptive of the premises conveyed, and no force at all, unless as qualifying and limiting the grant. It is an important rule of construction, applicable to all -written instruments, that every word and every. clause shall, so far as possible, be given some force and meaning, and that in case, construing the whole instrument one way, meaning is given to every word and clause, while construing it another way some portion of the language used is rendered meaningless, the construction, which gives force and meaning to all the language used, is, as a rule, to prevail. This is upon the presumption that the party making the instrument did not use any language except what was necessary to make it speak the intention of the parties thereto. Again, when it is doubtful what the construction should be, resort to the circumstances surrounding the transaction may be had to enable the reader to understand and apply the language used.

The language of the deed indicates that the grantee was already in the occupation of the premises granted. The only possible use to which the grantee could put the premises was for its plank road. Hence it would desire to purchase the right so to use it only. It was also natural that the grantor should desire to limit the grant, it being a strip of land four rods wide through his entire farm. The consideration of the deed, $40, is quite inadequate for an absolute grant of three acres, so situated as to sever the orator's farm. Under these circumstances we should naturally expect to find an easement rather than a fee granted.

When language is found in the instrument making the grant, fitted to create the grant naturally to be desired by both parties, although not in the usual form of such a grant, it should be given its evidently intended force and effect. *Keeler* v. *Wood*, 30 Vt. 243. In making the conveyance a common printed blank deed was used. It was easier to write the limiting clause in the blank space left to be filled with the descrip-

tion of the premises, and at the close of such description, than to erase and insert it in the *habendum*. We think this clause was intended as a limitation upon the grant, reducing it from the grant of the fee to a grant of an easement for the use of a plank road, all that the grantee cared to acquire, and all that the grantor would be likely to desire to part with.

II. If the St. Albans and Richford Plank Road Co. only took an easement in the premises, it is not contended, under the recent decisions—*Kendall* v. *Railroad Co.*, 55 Vt. 438; *Kittell* v. *Railroad Co.*, 56 Vt. 96; *Adams* v. *Railroad Co.*, 57 Vt. 240—on the facts found by the master, that the orator is not entitled to recover, unless he is barred by the Statute of Limitations which is insisted upon. This suit was brought to the April Term of the Court of Chancery of Franklin County, 1885. The railroad company entered upon the land in 1870, but acknowledged its obligation to pay the orator's damages by an order on the treasurer therefor, August 29, 1876. The trustees, under the mortgage, took possession in November, 1877. If this were an action at law to collect the damages thus agreed upon, it would be barred by the Statute of Limitations. While it is a suit in equity for the collection of those damages, it is also more than that, as it seeks to recover the premises, if the damages are not paid within the time limited for that purpose.

The result of the recent decisions of this court in this class of actions, as I understand them, though it has not been so expressly stated, is, that where from all the facts and circumstances it is evident, the landowner intends to hold the title of the land taken, until his damages are paid, the law will treat him as it does any owner of real estate who by contract allows another to take possession of the premises contracted to be sold and to make improvements or payments, who is not to have a conveyance of the title until the entire or a specified portion of the purchase money is paid, as holding the title as security for the payment of the damages ascertained, or to be ascertained, or the contract price. While strictly speaking

the relation of mortgagor and mortgagee does not exist between parties so related to real estate, yet in equity they are treated very much as though that relation did exist between them. The time stipulated for payment or other performance is rarely in equity considered the essence of such contracts. If the purchaser by contract is ready and willing to perform, though after the time stipulated, he is allowed in equity to do so, and the contractor is decreed to convey upon such tendered performance. This is the rule in equity, unless the case is exceptional, and the contractor will be placed at a disadvantage by the allowance of a subsequent performance. The contractor, until the time for performance has expired, holds the title to the premises in trust for the purchaser by contract, and also as security for performance by the contract purchaser. Where the purchaser in possession has not fulfilled, the contractor may maintain ejectment for the recovery of the premises contracted to be sold. But if the purchaser in possession has partly performed, though not in time, he may in equity be allowed to perform and receive conveyance, and have the suit in ejectment perpetually enjoined. Inasmuch as the purchaser in possession may almost always, if not always, thus force the contractor into equity, the contractor may first bring his suit in equity and have the rights of the purchaser in possession in the premises foreclosed, if he refuses or fails to perform in such extended time as the court of equity may allow. The relation of a landowner, where land is taken by a railroad company for the use of its railroad, with or without the exercise of the power of eminent domain, who either consents that the railroad company may take possession or forbids it, if he clearly evinces an intention and purpose to hold the title until his damages are paid,—while, from the nature of the possession and the interests involved, he may not maintain ejectment,— is, in equity, that of the owner of real estate who has contracted to sell it, on certain conditions being performed or payments made, and has allowed the purchaser to take possession. He may like such owner enforce the performance by a time limited

in equity, or recover possession of the premises contracted to be sold. I think all the recent cases on this subject fall within this familiar principle in equity. By the suit in equity the landowner says, in substance: "I still hold the title of the premises taken; I never intended the railroad company should have it until it paid me my damages. It has not paid the damages, either because it never agreed to, or agreed to, and has not performed its agreement. I ask that it shall pay or surrender to me the possession of the premises.". It is thus seen that the suit in equity is really for the recovery of the possession of land, and is not barred by the Statute of Limitations, if at all in equity, until fifteen years have elapsed. While the Statute of Limitations is not strictly applicable to suits in equity, courts of equity recognize the time limited by such statutes as the time when a party should be at rest from the embarrassments and perplexities of litigation. No such facts exist, nor such time has elapsed, as would lead a court of equity to refuse the orator relief in this case.

III. The only further contention is in regard to the time when the interest is to commence. The finding of the master as to the agreement in regard to the damages is equivocal as to the time when the sum found is to commence to draw interest. It is that the orator is entitled to interest, on the sum found as damages, from the time the railroad company would be legally bound to pay it. If there had been no agreement in regard to the damages that would be from the time it took possession. But it is found that by the agreement with the railroad company interest would commence on the $300 August 29, 1876. This is all the orator has claimed by his bill. He must be held to the demands of the bill; nor should he be allowed to amend it, in this respect, on the equivocal finding of the master on this subject.

The decree of the Court of Chancery is reversed, and the cause remanded with a mandate to enter a decree that unless the defendants pay to the clerk $481.50 with interest since September 20, 1886, and costs of suit, for the orator by a time

to be limited by the Court of Chancery, the defendants shall be perpetually enjoined from using the premises 'described in the bill; and upon such payment, if made, the orator is to deliver to said clerk a deed of said premises for the use of a railroad to the defendants before receiving the money.