Appeal from Fourth District.

## COLTHARP v. COLTHARP.

No. 2908.   Decided September 19, 1916.   (160 Pac. 121.)

1. DEEDS—CONSTRUCTION—INTENTION OF PARTIES.  In the construction of deeds, the intention of the parties as it appears from the ordinary and generally accepted meaning of the language used by them when applied to the subject-matter of the writing in the light of its surrounding circumstances controls, rather than mere technical words or phrases.[1]  (Page 394.)

2. DEEDS—CONSTRUCTION—CONVEYANCE OR POWER OF ATTORNEY.  A writing executed by a husband in the presence of witnesses and acknowledged before a notary public, and delivered to his wife, entitled a "Deed of Conveyance," whereby he gave, sold, granted, and demised all of his personal and real property of which he was then possessed to her, in consideration of love and affection, and in contemplation of a trip abroad, his poor health, and expressly declaring his intent that she should take an immediate present title in fee simple of his realty, and actual possession of his personalty, and do with them as she might think for her best interest, and that to such extent the instrument might be treated as a general power of attorney to dispose of the property as if it were her own, contained apt words of a grant, and was a deed of conveyance of all his property to the wife, the words "give and demise" and the words "all of" being mere repetitions, not changing the legal effect of the instrument as a whole, and being mere surplusage.   (Page 394.)

3. DEEDS—POWER OF ATTORNEY—CONSTRUCTION OF INSTRUMENT.  Such instrument was not a mere power of attorney to the wife, ceasing at the husband's death, since after the clearly expressed intention to give the property to her absolutely, the words relating to her power to dispose of the property would be treated as surplusage.   (Page 395.)

4. DEEDS—CONSTRUCTION—REPUGNANCY.  Where there are words or phrases found in different parts of a writing which are repugnant, the courts must, if possible, construe the whole instrument so that all of its parts may be harmonized and be given either a primary or secondary meaning.   (Page 395.)

[1] *Caine* v. *Hagenbarth*, 37 Utah 69, 106 Pac. 945; *Burt* v. *Stringfellow*, 45 Utah 207, 143 Pac. 234; *Reese Howell Co.* v. *Brown*, 48 Utah 142, 158 Pac. 684.

Appeal from District Court, Fourth District; *Hon. A. B. Morgan,* Judge.

Action of claim and delivery by Hattie Coltharp against William H. Coltharp.

Judgment for defendant, and plaintiff appeals.

REVERSED, and cause remanded, with direction to grant new trial.

*J. A. Wilson, J. H. McDonald* and *Whitecotton & Bagley,* for appellant.

*O'Donnell & Calder* and *Thurman, Wedgwood & Irvine,* for respondent.

## APPELLANT'S POINTS.

Although courts in construing a deed seek for the intention of the grantor by an examination of the entire instrument and effectuate his intention when found, nevertheless, it is their duty when rules of construction have been settled to enforce them; otherwise, titles are rendered uncertain and insecure. (*Wilkins* v. *Norman,* 111 Am. St. Rep. 767.) In doubtful cases, where, after considering the circumstances and situation of the parties, and reading the entire instrument, it is impossible to harmonize the statements and give effect to all parts of the instrument, resort must be had to arbitrary rules. The most important of these rules are:

(a) Where two clauses in a deed are so inconsistent, contradictory or repugnant that they cannot be reconciled and both given effect, the technical rule is that the first is to be received and the last rejected. (See note to *Wilkins* v. *Norman,* 111 Am. St. Rep. 772.)

(b) Deeds are always to be construed most strongly against the grantor and in favor of the grantee, when there is any ambiguity or uncertainty. (*Dodge* v. *Walley,* 22 Cal. 225; *Piper* v. *True,* 36 Cal. 606; *Vance* v. *Fore,* 24 Cal. 436; *Chas. River Bridge Co.* v. *Warren Bridge Co.,* 11 Peters 589; 2 Devlin on Deeds, 3d Ed., Sec. 848, p. 1560.)

(c)   If a reconciliation between the repugnant clauses in a deed is impossible, the clause will be retained which gives the greatest estate and the clause in conflict with this will be rejected. (*Post* v. *Weil,* 12 Am. St. Rep. 809; 2 Devlin on Deeds, p. 1534.)

(d)   A grantor cannot destroy his own grant having once granted an estate in his deed. No subsequent clause can operate to nullify it. (*Carl Lee* v. *Ellsberry,* 118 Am. St. Rep. 60; *Maker* v. *Lazell,* 23 Am. St. Rep. 795; 2 Bacon's Abridgement, 665; Shepard's Touchstone, 79, 102; See also the recent case of *Leslie* v. *Harrison Nat'l Bank,* 154 Pac. Rep. 209.)

FRICK, J.

The plaintiff commenced this action of claim and delivery under our statute. Judgment was entered in favor of defendant, and plaintiff appeals.

Two causes of action are stated in the complaint. In the first cause plaintiff seeks to recover the possession, or the value, of a certain certificate representing twenty shares of the capital stock of a certain corporation, which stock, it is alleged, was of the value of $1,000. In the second cause of action she seeks to recover possession, or the value, of 60 head of cattle alleged to be of the value of $3,000. The defendant answered the complaint, and while he disclaimed either ownership or interest in any of the property in question, he, nevertheless, denied that the plaintiff is the owner thereof, and avers that he merely holds the property for its true or rightful owner.

The case, in the court below, went off upon a question of law which arises as follows: The plaintiff and one Hugh W. Coltharp, who was a brother of the defendant, on the 14th day of March, 1914, were husband and wife. Said Hugh W. Coltharp died on the 22d day of August, 1914, and a considerable time before this action was commenced. On the date first aforesaid, Hugh W. Coltharp made and delivered to the plaintiff, his wife, an instrument in writing which, as copied from respondent's brief, is in words and figures as follows:

"Deed of Conveyance.

"I, the undersigned, Hugh W. Coltharp, of Vernal, Utah,

hereby give, sell, grant and demise all and singular, all of my personal and real property of which I am possessed in presenti to my wife, Hattie Coltharp of Vernal, Utah.

"The consideration of the above grant is love and affection.

"At the time of the ensealing of this instrument, I am contemplating a trip abroad, and knowing the uncertainty of world affairs and being in poor health, it is my desire to provide for said wife.

"It is hereby intended that my said wife shall take an immediate present title in fee simple of my real property and actual personal possession of my personal effects and to do with them as to her may be to her best interest. And to that extent, this instrument may be treated and considered as a general power of attorney to do and to act and to dispose of said real and personal property the same as if it were her own.

"Executed at Vernal, Utah, this 14th day of March, 1914.

                                              Hugh W. Coltharp.

"Executed in the presence of

    "Amos Hoeft,

    "D. D. Carter, Myton, U.

"The above parties, both principal and witnesses, appeared before me, this the 14th day of March, 1914, and duly acknowledged their signatures thereto.

                            "J. S. Wilson, Notary Public."

At the trial the plaintiff produced the foregoing instrument and offered the same as evidence of title to the property in question. In addition to the instrument she also produced proof identifying the property described in the complaint as the property of her husband, Hugh W. Coltharp, at the time of his death, and that the instrument was executed and delivered. The defendant in his answer admitted that plaintiff's husband owned thirteen head of cattle and no more, and in which he disclaimed all interest as he did in the capital stock. He, as before stated, denied plaintiff's title. The defendant objected to the introduction of the foregoing instrument in evidence for any purpose, upon the grounds that it was—

"immaterial, irrelevant and incompetent, * * * and that it purports to be a general power of attorney, instead of an absolute conveyance of the property in fee simple, and it

appearing from the evidence that the grantor or maker of the instrument is dead, the power thereby ceases for any purpose."

The defendant's objection to the introduction of the instrument was sustained; and, the other evidence standing alone being insufficient to prove title in the plaintiff, the District Court directed the jury to return a verdict upon both causes of action for the defendant, which was accordingly done, and judgment was entered as before stated. Plaintiff excepted to the ruling of the court, and has assigned the same as one of the principal errors.

The evidence shows that at the time the instrument in question was made and delivered Hugh W. Coltharp and the plaintiff were husband and wife; that they were married in April, 1910; that as the fruit of such marriage two children were born, one of whom, at the time of the trial was three, and the other four years of age; that Hugh W. Coltharp, at the time of his death, was twenty-eight, and the plaintiff twenty-three years of age. Just before the instrument was delivered it was also shown that Hugh W. Coltharp had returned from a fishing trip, and in delivering the instrument plaintiff testified "he told me he came very near getting hurt, and when he came home he told me I better have that," the instrument in question. She also testified, "He told me to have it recorded." The instrument was recorded June 7, 1915. It also appears from a recital in the instrument that when it was delivered plaintiff's husband contemplated making a trip abroad. The matters last above referred to are material only in so far as they illustrate the circumstances surrounding the parties to the instrument at the time of its execution and delivery. What we must determine, therefore, is whether the instrument in question is merely a power of attorney, as contended for by defendant's counsel, the force and operation of which ceased at Hugh W. Coltharp's death, or whether it is to be considered as a deed of conveyance by which all of the property belonging to the grantor was intended to be and was conveyed to his wife.

The rule of construction applicable to instruments of writing, including deeds, in this jurisdiction is that the intention

of the parties, as the same is made apparent from the ordinary and generally accepted meaning of the language used by them when applied to the subject-matter of the writing in the light of the surrounding circumstances of the parties at the time, controls rather than mere technical words or phrases. *Caine* v. *Hagenbarth*, 37 Utah 69, 106 Pac. 945; *Burt* v. *Stringfellow*, 45 Utah 207, 143 Pac. 234; *Reese Howell Co.* v. *Brown*, .. Utah .., 158 Pac. 684.

If, therefore, we give the language of the instrument its ordinary and generally accepted meaning and apply that language in the light of the circumstances surrounding the parties to the instrument and the subject-matter thereof, what was the intention of Hugh W. Coltharp, the grantor, in making and delivering the same? It certainly cannot be successfully contended that the instrument lacks apt words of grant, or that it lacks any essential element of a conveyance. It is not disputed, certainly not seriously, that such is the case, but it is vigorously insisted by defendant's counsel that the latter part of the instrument clearly indicates that Hugh W. Coltharp merely intended to execute and deliver a power of attorney to his wife. From a full consideration of all that is said in the instrument we are forced to disagree with counsel. It is true that it is said that "this instrument may be treated and considered as a general power of attorney." That phrase must, however, be considered, not only in the light of everything else that is said, but must also be considered in the light of what is said immediately preceding and in connection with the phrase. What is the language that immediately precedes the phrase in question? The grantor says:

"It is hereby intended that my said wife (the grantee) shall take an immediate present title in fee simple of my real property and actual personal possession of my personal effects and to do with them as to her may be to her best interest."

Then the instrument proceeds thus:

"And to that extent this instrument may be treated and considered as a general power of attorney to do and to act and to dispose of said real and personal property the same as if it were her own."

In the granting clause the grantor had already used apt words of both grant and gift. He said:

"I  *  *  *  hereby give, sell, grant and demise all and singular all of my personal and real property of which I am now possessed in presenti (præsenti) to my wife, Hattie Coltharp."

Then follows a statement of the consideration that is followed by the recital relative to what induced the grantor to make the instrument, and then follows what we have already quoted concerning the power of attorney. If all that is said concerning the power of attorney is considered, it is plain enough that the grantor merely intended to grant the power in the sense of conferring power upon his wife to immediately dispose of the property. It is too clear for controversy that the grantor intended to make provision for his wife and children in case he should leave them as recited in the instrument. If the instrument be considered merely as a power of attorney and not as a grant, which power terminated at the death of Hugh W. Coltharp, then he merely constituted his wife his agent, and thus, in a legal sense, made no provision for her at all. Then again, in passing upon the true meaning and effect of the instrument, it should be borne in mind that it is very inartificially drawn. There are a number of unnecessary repetitions of words used in the instrument. For example, it is said, "I *give*, sell *and demise* all and singular *all of* my personal and real property," etc. (Italics ours.) Now the italicized words "give and demise" and the two words "all of" are mere repetitions and neither add anything to nor take anything from the ordinary meaning of the other terms used. Nor can these words be permitted to change or affect the legal effect of the instrument as a whole. The law regards substance and not form. These words must therefore be regarded as mere surplusage.

We now approach that portion of the instrument which, it is contended and which the District Court held, constitutes the instrument a mere power of attorney. Here **3, 4** we again meet with the crudeness and inartificiality of the language used. Notwithstanding those defects, however, the real intention of the grantor is quite clear. While it is

quite true that it was not necessary to confer power upon the wife to dispose of the property if the same had been granted and conveyed to her, yet neither was it necessary to "give and demise" the same to her if it had been sold and granted as stated in the instrument. It is clear that it was the grantor's intention to grant absolutely, then the words relating to the power to dispose of the property may also be treated as mere surplusage so far, at least, as they would affect the grant in question. While it is quite true that every word, and of course, every phrase, must be given its ordinary and usual meaning and effect, yet where unnecessary words are used in a grant and it is clear that they were not intended by the grantor as limitations upon the grant, but rather as conferring a power which existed by implication of law, courts may not cut down the grant merely because useless words are incorporated in the instrument. Moreover, where there are words or phrases found in different parts of a writing which are repugnant the courts must if possible, construe the whole instrument so that all of its parts may be brought in harmony and so that all of its parts may be given some meaning and effect, whether primary or secondary. As already pointed out, the ruling intention of the grantor was to make provisions for his wife and, no doubt, for his and her children. By granting the property to his wife he would effectuate that purpose, whereas, if he merely conferred a naked power of attorney upon her, he would not have done so since she, under such an instrument, would have been merely his agent and not his grantee.

But it is suggested that by the terms of the instrument she had complete power to dispose of the property as to her might seem best and as though it were her own, and hence she would not have to account for anything she had disposed of under the power granted to her during the husband's lifetime. That may be one plausible view to take, but it is not the only view, and, in our judgment, it is not the correct one. As we view it, the correct view and the one which harmonizes all the different parts of the instrument, is that, as before pointed out, the grantor merely intended to confer the power of disposition upon the wife in express terms, whereas that power under the

grant was implied. Why say ''and to that extent this instrument may be treated as a general power of attorney'' if it was intended to confer a mere power of attorney upon the wife? Those words clearly imply that the grantor did not desire any question to arise concerning the wife's immediate right to possess herself and to dispose of the property as she pleased. Of course she already had that right by implication of law, but that, in view of all that is said in the instrument, did not, and was not intended to, affect the grant, but what the husband intended was not to leave any doubt concerning her right and hence what is said about a power of attorney was added in the crude and inartificial manner as it appears there.

We are of the opinion that the District Court committed manifest error in its construction of the instrument, and hence in directing a verdict and in entering judgment for the defendant.

For the reasons stated, the judgment is reversed, and the cause is remanded to the District Court of Uintah County, with directions to grant a new trial. Plaintiff to recover costs.

STRAUP, C. J., and McCARTY, J., concur.