## HAYNES v. HUNT et al.

No. 5979.   Decided January 3, 1939.   (85 P. 2d 861.)

*Moyle & Moyle,* of Salt Lake City, for appellant.

*Chris Mathison* and *E. A. Rogers,* both of Salt Lake City, for respondents.

LARSON, Justice.

The questions presented on this appeal arise from the following facts. On June 18, 1932, Joseph F. Livingston, the owner of some 6,200 acres of grazing lands in Summit County, entered into a written contract wherein and whereby he agreed to sell and convey to plaintiff by warranty deed said grazing lands, the terms of which contract as far as pertinent here contained the following provision:

"It is understood and agreed that the said lands are conveyed subject to a fishing privilege in three certain lakes located on or near Section 35, Township 2 North of Range 8 East; Salt Lake Meridian granted by the said first parties to six individuals, to-wit: Dr. E. A. Hunt, E. D. Sorenson, J. F. Livingston, J. Leo Shepherd, William H. Sprunt and Ralph L. Folsom, in consideration of the said parties stocking the said lakes with trout and building certain roads and bridges from the main highway on Chalk Creek over and across the said lands to the said lakes and that so long as the said parties keep the said lakes stocked with trout and assist in maintaining the main highway across the said lands to the said lakes from the principal highway on Chalk Creek that the said parties shall have the privilege of traveling over the said highway to and from the said lakes and have the right to catch the said fish in the said lakes and reasonable camping privileges in the immediate vicinity thereof."

On the same date Livingston and wife executed and delivered to plaintiff a warranty deed to said property, in statutory form, no reference being made in said deed to the Hunt fishing rights or as to any limitations, encumbrances or rights or interests of any other person in the property.

On April 14, 1934, E. A. Hunt, one of the defendants, recorded in the office of the County Recorder of Summit County, a deed executed by Livingston in favor of Hunt, dated April 14, 1932, two years previous, said deed reading as follows:

"Joseph F. Livingston, and Ella I. Livingston, his wife, Grantors, of Salt Lake City, County of Salt Lake, State of Utah, hereby convey

and warrant to E. A. Hunt, Trustee, grantee, of the same place * * * for the sum of One Hundred Dollars, and other good and valuable considerations the following described tracts of land in Summit County, State of Utah:

" 'All the ground covered by two certain lakes or bodies of water, located, one in the West half of the Southeast ¼ of Section 27, and one in the Northwest ¼ of Section 35 in Township 2 North, Range 8 East Salt Lake Meridian, together with the right of ingress and egress to and from the said lands over and across the following described lands as now owned by said grantors in Sections 4, 8, 9, 15, 16, 22, 23, 26, 34, 35, and 27 all in Twp. 2 North 8 East, and Section 3 Twp. 2 North, Range 8 East Salt Lake Meridian, over and along highways that are now constructed or that may be constructed; Together with reasonable use of the ground abutting on said lakes for camping privileges. Said lakes are to be used for the propagation of fish and the removal of the same by the grantees or assigns.

" 'Reserving and excepting therefrom all grazing rights and privileges and the use of said waters for watering livestock. Witness, the hand of said grantors, this 15th day of April,

" 'Signed in the presence of

" 'Joseph F. Livingston<br>
" '[Signed]

" 'Wm. B. Livingston    Ella I. Livingston<br>
 " '[Signed]      [Signed]' "

The following questions are presented for consideration:

(1) Is the grant to Hunt as trustee a license or an interest in real property?

(2) If an interest or estate in the property is granted, what is its nature or extent?

(3) Does the provision in the Hunt deed with respect to camping privileges entitle the grantees to select a site for exclusive use, or merely grant a camping privilege or easement?

(4) Are the fishing rights exclusive in Hunt and his cestuis que trustent? We shall consider them seriatim.

(1) In determining what was granted to Hunt as trustee by his deed from Livingston we look first to the instrument itself. It is conceded by all parties that the deed is not a grant absolute in fee simple. Thus respondents, in their brief say, "Whatever estate that deed may purport to con-

vey, it cannot, upon proper construction, be claimed that it is an absolute grant, or anything more than a profit a prendre together with the incidental easements mentioned * * * The words, 'said lakes are to be used for the propagation of fish and the removal of the same by the grantees or assigns,' are decisive of the estate carved out." And these statements correctly reflect the rule as laid down by the authorities. Language of similar import was held in *Robinson* v. *Missisquoi R. Co.,* 59 Vt. 426, 10 A. 522, to create an easement. The words "for the use of a plank road" seem to have been decisive of the estate carved out although the deed otherwise purported to be an absolute grant. See, also, *Sanborn* v. *City of Minneapolis,* 35 Minn. 314, 29 N. W. 126; *Powell* v. *Cone,* 100 Neb. 562, 160 N. W. 959.

Does the instrument grant a license or an interest in the land? The granting clause is "convey and warrant" and describes the land under the waters, "together with reasonable use of the ground abutting on said lakes for camping privileges. Said lakes are to be used for the propagation of fish and the removal of the same by the grantees or assigns." From these provisions, we have here, therefore, nothing but a fishing privilege in the lakes with reasonable camping privileges on the lakes. *Guilford County* v. *Porter,* 167 N. C. 366, 83 S. E. 564; *Kendall* v. *Parsons,* 81 Kan. 192, 105 P. 25.

"In construing a deed to determine the estate granted and the persons to whom granted, the court will seek the grantor's intention from the various parts of the deed, including the granting clause and the habendum, giving due effect to all where it can be reasonably done." *Marvin* v. *Donaldson,* 329 Ill. 30, 160 N. E. 179; *Triplett* v. *Williams,* 149 N. C. 394, 63 S. E. 79, 24 L. R. A., N. S., 514; *Lee* v. *Barefoot,* 196 N. C. 107, 144 S. E. 547; 9 R. C. L. 748; Thompson, Real Prop. Vol. I, P. 404.

"When the intention of the parties to a deed or contract can be ascertained from it, such intention will prevail, unless in contravention of some rule of law; and, when such intention can be ascertained, arbitrary rules of law are not to be invoked, and will not control the construction of the instrument. *Kirwin* v. *Farr,* 17 Utah 1, at

page 5, 53 P. 608, at page 609; *Coltharp* v. *Coltharp*, 48 Utah 389, 160 P. 121.

"A more modern rule and that now followed by the greater number of courts is that the whole deed and every part thereof is to be taken into consideration in determining the intent of the grantor, and clauses in the deed subsequent to the granting clause are given effect so as to curtail, limit, or qualify the estate conveyed in the granting clause." *Breidenthal* v. *Grooms*, 161 Okl. 74, 17 P. 2d 688, 689; *Forgeus* v. *Santa Cruz County*, 24 Cal. App. 193, 140 P. 1092; *Robinson* v. *Missisquoi R. Co.*, 59 Vt. 426, 10 A. 522.

An examination of the deed in this respect convinces us that it is a grant of an interest in land and not a mere license. A conveyance of land with a restriction that it shall be used only for a road is a grant of an interest and not a mere license. *Aumiller* v. *Dash*, 51 Wash. 520, 99 P. 583; *Kent Furniture Mfg. Co.* v. *Long*, 111 Mich. 383, 69 N. W. 657.

The right to propagate and remove fish from these lakes conveyed to Hunt, trustee, by the deed, exhibit 2, removes the grant from the character of a mere license while the words "convey and warrant" under our statute (R. S. U. 1933, 78-1-1 to 78-1-3) suffice to pass an estate in the lands. A conveyance of land and enclosed waters thereon for the propagation and removal of fish is a broader grant than that of a mere right to enter and fish or hunt upon the land and waters of the grantor. A like difference exists between a grant of an enclosed parcel of land for use in the culture of wild or domestic animals or fowl of the grantee and the grant of a right to enter upon lands of the grantor and kill for food, sport or market, the fowl or animals of the grantor. The latter in each instance is the grant of a profit a prendre; the former is a grant of land for specific uses.

It is needless however to point the distinction further. For no matter whether we regard the deed, exhibit No. 2, in this case as granting an estate in the nature of a profit

a prendre to fish upon the grantor's waters or an estate in the land for specific uses, or upon condition subsequent,—in either case there is an irrevocable estate in realty conveyed by the deed, which is good against the appellant's action to quiet his title in respect thereof. The same result follows if we should treat the deed as conveying an easement in gross, as contended by plaintiff, rather than either of the other two conceptions. The deed to Hunt also contained a clause, "Reserving and excepting unto the grantor" the grazing rights and the use of the water for watering livestock. A reservation and exception from a grant is persuasive that the grant was more than a license.

(2) Having concluded that the deed evidences a grant of an interest or estate and not a mere license, it becomes necessary to determine the nature or extent of the interest granted, that is, whether it is personal or inheritable and assignable. Plaintiff argues that if an estate is granted it is at most only an easement in gross, which is personal and not inheritable, while respondent contends it is a profit a prendre and passes to the heirs and assigns. We are not interested in the use of terms but we are in concepts, relationships and legal rights which for convenience are often described by the use of legal names or expressions. The language in the deed to Hunt, "hereby convey and warrant" normally implies a grant of the fee, but as shown supra the qualifying clause, "to be used for the propagation of fish and the removal of the same" unless properly descriptive of the premises, is such language as would naturally be used to qualify or limit the grant, to change it from a fee to an easement. The description of the property for grant of a fee is complete without this clause, and unless the clause is used to limit or qualify the grant it can serve no purpose whatsoever. It is an elemental rule of construction that in construing such instruments every word must be given effect if possible and reasonable, upon the theory that the grantor used no words except those necessary or con-

venient to express the intent of the parties. The record indicates and respondents concede on this appeal that they were already in possession of all rights they now claim before the deed was executed, and the deed was made only to evidence (confirm) those rights. The supreme court of Vermont in *Robinson* v. *Missiquoi R. Co.*, supra, 10 A. 524, has well expressed the situation here presented in these words:

"When language is found in the instrument making the grant, fitted to create the grant naturally to be desired by both parties, although not in the usual form of such a grant, it should be given its evidently intended force and effect. *Keeler* v. *Wood*, 30 Vt. [242] 243. In making the conveyance, a common printed blank deed was used. It was easier to write the limiting clause in the blank space left to be filled with the description of premises, and at the close of such description, than to erase and insert it in the habendum. We think this clause was intended as a limitation upon the grant, reducing it from the grant of the fee to a grant of an easement for the use of a plankroad, all that the grantee cared to acquire, and all that the grantor would be likely to desire to part with."

Without repeating them we refer again to the cases cited in the first part of this opinion under the discussion of question one.

Respondents introduced in evidence over appellant's objection the contract of sale between Livingston and appellant for the purpose of proving the nature and extent of the rights respondents claimed and obtained under the deed; and also introduced in evidence over appellant's objection oral testimony as to the rights which Livingston gave to them. Appellant insists the admission of this testimony was error. Whether or not appellant's objection was well taken we need not now decide. Certainly as against respondents the evidence may be considered. And that evidence, both the written and the parole, clearly shows and establishes that respondents were to have a right to plant trout in the lakes and to take them from the lakes, together with reasonable camping privileges in the immediate vicinity of the lakes for the purpose of propagating

fish and fishing, also a right of way to the lakes over the roads then constructed or to be constructed, such rights to continue only as long as respondents kept the lakes stocked with trout and assisted in maintaining the highway across the lands and to the lake. It also appears from this same evidence that appellant and his herders were to have the right to fish in the lakes. It seems inescapable therefore that all respondents claimed, and all they received by the deed, was an easement in the nature of a right of way over appellant's lands to the lakes together with the right to plant and propagate trout in the lakes, and fish in the lakes, with reasonable camping privileges about the lakes for such purposes. Respondents therefore did not receive the fee but only an interest or easement in the lands for certain limited and defined purposes. They did not claim anything more and in their testimony expressly disavowed any other or greater right or claim.

Having then settled the extent of respondents' rights, we turn our attention to the nature of them. Were they inheritable or personal? To determine this question, besides the deed, we have again the evidence put into the record by respondents over appellant's objection. W. R. Livingston, called by respondents and over objection of appellant, testified:—that when the fishing rights were discussed Joe Livingston told Haynes what nice fellows these doctors were; that these fellows would not abuse a privilege; that they were people who would take care of things and not interfere at all; they would not abuse the fishing privilege. E. A. Hunt, one of the respondents, testified: that when he spoke to Livingston in 1928 about having some friends (the other respondents) in with him, Livingston answered that if they were all like Dr. Hunt he could take them in; that Livingston said "If they are like you, it will be alright; they can help you stock the lakes and you can fish them out together;" that they talked about putting a locked gate over the road and giving every interested party a key so no one else could come in; that in 1934 respondents told appellant

that they did not claim or did not want any instrument that would interfere with his title or with the property; and then said:

"Question: You were willing for you and the other doctors, six in all, was willing to quitclaim and give up all right, if you had any, providing he would concede you and your families could fish there? Answer: Yes, all we wanted was the fishing rights."

And again he said:

"We had no desire to send anybody up there without they went with one of we fellows, who had what we figured the rights to go in."

Again, being asked about a conversation about the owner not wanting many people up there because of the sheep, he testified:

"Question: And did he say why people would interfere with the sheep? Answer: Yes, when you drive through a herd of sheep it disturbs them, you disturb them at their feed, and naturally it disturbs their entire growth, and the least disturbance, we realize a herd of sheep has, the better the sheep are off.

"Question: And besides that, if irresponsible people come up, sometimes they go out for a celebration on the 4th of July, or some other day, and sometimes they perhaps indulge, and there might be a lot of trouble with regard to the sheep? Answer: Yes, that coincided entirely with our desire to keep the public out; we didn't want them in.

"Question: And you felt Mr. Haynes should always have more or less control over who should go up there? Answer: And protection up there as far as we could give it to him.

"Question: And have some right to say who should go and who should not? Answer: Naturally.

"Question: Whether they were your friends or whether they were not? Answer: Yes."

He also said respondents recognized Haynes' right to fish in the lakes.

E. D. Sorensen, who drew the agreement between Livingston and appellant, called by respondents, testified over objection of appellant that they told appellant that all the men interested in the fishing rights were all fine gentlemen: that

Haynes was to have fishing rights but his name was not put in the agreement because he held the fee to the land and would have a right there without it; that the fishing privileges were exclusive to "those parties named in the agreement, Haynes and his family and his herders." One of the attorneys for respondents stated into the record that they did not desire to exclude Haynes from fishing, and they did not claim he had no rights to fish.

It is thus evident from respondents' own evidence that when they first acquired their rights from Livingston it was talked about and understood that such rights were limited, both as to number and identity of persons, because of the possibility of disturbing and interfering with the sheep; and that the respondents other than Doctor Hunt were permitted to come into the rights only because they were men like Dr. Hunt who would not abuse the privilege. This seems to be conclusive by respondents' own evidence.

Without detailing the testimony further we think the record permits of but this conclusion: That the respondents' rights were limited to the right of way over the land to the lakes, the right to plant and propagate trout in the lakes, and the rights of respondents and their families to reasonable camping privileges about the lakes, and to fish in the lakes conjointly with Haynes, his family and his herders; and that such rights were personal and not inheritable.

That part of the decree permitting respondents to select camp sites on the lakes, that part of the decree approving such selection, and that part quieting respondents' title and estate therein are also set aside and declared null and void. The most respondents can claim either under their own evidence or under the language of their deed is an easement for camping purposes on the lands around the lakes, not interfering with appellant's grazing and stock watering rights. The parties should be given an opportunity to agree on camp sites suitable to the rights of all concerned. If they cannot agree, the court should take

evidence to determine the same, mindful of the fact that respondents have only an easement and appellant's grazing and watering privileges must not be unreasonably interfered with.

The judgment is reversed and the cause remanded to the trial court with directions to make findings, conclusions and decree in harmony with the views herein expressed. Appellant to recover costs.

FOLLAND, C. J., and MOFFAT and WOLFE, JJ., concur.