2006 UT App 399

**Robert D. IRVINE, Plaintiff and Appellee,**

v.

**Sharon Craig ANDERSON and Colleen Craig Erickson, Defendants and Appellants.**

**No. 20050138–CA.**

Court of Appeals of Utah.

Oct. 5, 2006.

James G. Swensen, Salt Lake City, for Appellants.

Dennis M. Astill, Astill Associates PC, Sandy, for Appellee.

Before Judges DAVIS, ORME, and THORNE.

## OPINION

THORNE, Judge:

¶1 Sharon Craig Anderson and Colleen Craig Erickson (the Defendants) appeal from a judgment in favor of Robert D. Irvine. We affirm.

## BACKGROUND

¶2 Ada Craig owned and resided in a home located in Salt Lake City (the Property). In 1981, Craig executed a deed that created a life estate in the Property for herself and conveyed the remainder interest to herself and two of her daughters, the Defendants, as joint tenants. The 1981 deed stated that Craig "hereby quit claims to [herself and the Defendants] as Joint Tenants with full rights of survivorship and not as tenants in common, reserving a Life Estate only for [herself]."

¶3 In 1996, Craig executed a last will and testament that devised her entire estate in equal shares to the Defendants. The will expressly excluded Craig's other children, including Irvine and Carolyn Abbott, from sharing in the estate.

¶4 By late 1998 it became necessary for Craig to move into a nursing care facility. In early 1999, Craig executed a durable power of attorney in favor of Irvine so that he could help her manage the Property and assist her with her move. Craig also conveyed her interest in the Property to Abbott by quitclaim deed, again reserving a life estate for herself. Irvine controlled and managed Craig's life estate interest in the Property on Craig's behalf from June 1999 until her death in July 2003. Irvine rented the home out during this period and used the rents to offset the cost of Craig's nursing care. Despite Craig's requests and financial needs, the Defendants would not consent to the sale of the Property so that Craig's one-third share in the proceeds could be used to meet her expenses. In May 2002, Abbott conveyed her remainder interest in the Property to Irvine.

¶5 Immediately after Craig's death in July 2003, the Defendants took control of the Property, claiming exclusive ownership and excluding Irvine from the premises. Irvine, who claimed a one-third interest in the Property, filed suit to realize that interest.

¶6 After a bench trial, the trial court concluded that Irvine and the Defendants owned the Property jointly in equal one-third shares. The court ordered the Property sold and the proceeds divided among the three owners. Over the objection of the Defendants, the court appointed Irvine as the receiver of the Property and ordered him to sell the Property and divide the proceeds. The court also denied the Defendants' request that Irvine be required to provide an accounting of his management of the Property from 1999 to 2003.

## ISSUES AND STANDARDS OF REVIEW

■ ¶7 The Defendants argue that the trial court erred in determining that the 1981 deed created both a present life estate and a future joint tenancy interest in Craig. The interpretation of an unambiguous deed presents a question of law, which we review for correctness. *See Khalsa v. Ward*, 2004 UT App 393, ¶7, 101 P.3d 843, *cert. denied*, 109 P.3d 804 (Utah 2005); *see also Gillmor v. Cummings*, 904 P.2d 703, 706 (Utah Ct.App. 1995) ("If a deed description is unambiguous, its interpretation is a question of law.").

■ ¶8 The Defendants also argue that they are entitled to an accounting from Irvine for the period that he controlled the Property prior to Craig's death. Under the circumstances of this case, this argument also presents a question of law. *See Gillmor*, 904 P.2d at 706.

■ ¶9 Finally, the Defendants argue that the trial court erred by appointing Irvine as· the receiver of the Property over their objections and without their written consent. This argument also presents a question of law and is reviewed for correctness. *See Harris v. IES Assocs., Inc.*, 2003 UT App 112, ¶25, 69 P.3d 297 ("To the extent this issue requires us to interpret rules of civil procedure, it presents a question of law which we review for correctness." (quotations and citation omitted)).

## ANALYSIS

### I.  Ownership of the Property

■ ¶ 10 The trial court determined that Irvine and the Defendants owned the Property jointly[1] in three equal shares.  Implicit in this ruling is a recognition that Craig's 1981 deed created for herself both a present life estate and a future joint tenancy interest in the Property.  The Defendants argue that joint tenancy is a concurrent interest that can only exist as a present estate, and that Craig's life estate and joint tenancy interest were therefore incompatible as a matter of law.

¶ 11 The Defendants present no authority in support of their position, and authority to the contrary is readily available.  In *Funk v. Young*, 592 P.2d 619 (Utah 1979), the Utah Supreme Court "addressed the issue whether a life tenant who joins *with a co-tenant in the remainder fee interest* has the right of partition or sale." *Id.* at 620 (emphasis added).  The *Funk* decision clearly recognized that concurrent interests can exist as future remainder interests subject to a present life estate.  *See id.* (referring to siblings who inherited property as co-tenants, subject to the life estate of another, as "vested remaindermen"); *see also* Restatement of Prop.: Future Interests § 175 (1936) (allowing for partition between remaindermen "[w]hen a future interest in land is owned in a joint tenancy or in a tenancy in common").  Accordingly, we see no incompatibility between Craig's life estate in the Property as a whole and her one-third joint interest in the remainder fee.

■ ¶ 12 We distinguish the case of *Robinson v. King*, 68 N.C.App. 86, 314 S.E.2d 768 (1984), on which the Defendants rely.  In *Robinson*, the court addressed an allegedly ambiguous deed in which "[t]he granting clause [gave] all right, title, and interest to [the grantee], while the habendum clause [gave] her the land 'for and during the term of her natural life.' "[2] *Id.* at 771.  The court determined the grantor's intent by examining the deed as a whole, and held that it was " 'clear beyond doubt' " that the grantor intended to convey only a life estate.  *Id.* at 772 (quoting *Triplett v. Williams*, 149 N.C. 394, 63 S.E. 79, 80 (1908)).  Here, the deed language does not purport to limit Craig's entire interest in the property to a life estate, but rather only reserves a life estate for Craig out of an otherwise valid present joint fee conveyance.  Craig's inclusion of herself among the joint owners of the remainder fee is not incompatible with her life estate, and the clear intent of the deed language is that she be granted both interests.

¶ 13 Craig's 1981 deed created both a life estate and remainder fee in which she had a one-third interest.  Craig's one-third remainder interest passed from her to Abbott to Irvine, who owned the interest upon the termination of Craig's life estate.  The trial court properly determined that when Craig's life estate terminated upon her death, Irvine and each of the Defendants each owned a one-third interest in the Property.

### II.  The Defendants' Entitlement to an Accounting

■ ¶ 14 The Defendants argue that they are entitled to an accounting from Irvine as co-tenants "from the date that their interests in the Property became present interests." However, as we have already determined, the Defendants' interests in the Property became present interests only upon Craig's death in 2003.  Thus, the Defendants' argument that they are entitled to an accounting as far back as 1999 is without basis.

---

1.  The transfer of Craig's joint tenancy interest from Craig to Abbott likely converted the joint tenancy into a tenancy in common. *See Crowther v. Mower*, 876 P.2d 876, 878 (Utah Ct.App. 1994) (stating that a joint tenant's transfer of her interest " 'has the effect of terminating the joint tenancy, and converting the ownership into a tenancy in common' " (quoting *Nelson v. Davis*, 592 P.2d 594, 596 (Utah 1979))).  We see no way in which the difference between the types of tenancies affects our decision or the proceedings below, and we will also use the term joint tenancy in its vernacular sense, indicating merely concurrent ownership.

2.  A habendum clause is a clause "whose purpose is to curtail, limit, or qualify the estate conveyed in the granting clause" of a deed. *Dansie v. Hi-Country Estates Homeowners Ass'n*, 1999 UT 62, ¶ 13, 987 P.2d 30; *see also Haynes v. Hunt*, 96 Utah 348, 85 P.2d 861, 863 (1939).

¶ 15 Upon Craig's death, the Defendants immediately took over management and control of the Property until the trial court's appointment of Irvine as the receiver of the Property. Between the time of Craig's death and Irvine's appointment as receiver, the Defendants had exclusive control over the rents and profits generated by the Property, and excluded Irvine from the management of the Property. Thus, the Defendants are not entitled to an accounting from Irvine over this period because they, rather than Irvine, controlled the rents and other profits during this time.

¶ 16 When Irvine regained control of the Property as a receiver, his appointment order contained a provision for an accounting to the Defendants over the course of the receivership. Irvine's receivership terminated after two months when the Defendants bought out Irvine's interest in the Property, and there is no suggestion in the record that Irvine failed to comply with the accounting provision of the appointment order. Thus, it appears that the Defendants have received all of the accounting to which they are entitled.

III. Appointment of Irvine as Receiver

¶ 17 The Defendants also argue that the trial court should not have appointed Irvine as the receiver of the Property. We agree. Rule 66 of the Utah Rules of Civil Procedure governs the appointment of receivers, and states in relevant part that "[n]o party or attorney to the action, nor any person who is not impartial and disinterested as to all the parties and the subject matter of the action may be appointed receiver without the written consent of all interested parties." Utah R. Civ. P. 66(b). The Defendants are interested parties and did not give their written consent to, and in fact objected to, Irvine's appointment.

¶ 18 Irvine argues that trial courts have extraordinarily broad discretion in the appointment of receivers, and that his appointment fell well within the bounds of that discretion under the circumstances of this case. *See, e.g., Interlake Co. v. Von Hake,* 697 P.2d 238, 239 (Utah 1985) ("A receivership is an equitable matter and is *entirely* within the control of the court." (emphasis added)). However, a court's inherent equitable powers regarding the appointment of receivers can exist only " 'in the absence of legislation to the contrary.' " *Chen v. Stewart,* 2004 UT 82, ¶ 50, 100 P.3d 1177 (quoting *Ex Parte Peterson,* 253 U.S. 300, 312, 40 S.Ct. 543, 64 L.Ed. 919 (1920)). The consent requirement found in rule 66 constitutes a clear limitation on the trial court's discretion, and we cannot simply ignore it as Irvine urges. We determine that the court erred when it appointed Irvine as the Property's receiver without the written consent of the Defendants.

¶ 19 We also determine, however, that the court's error in appointing Irvine was harmless. The trial court directed Irvine to manage and sell the Property. Irvine arranged a sale of the property within two months of his appointment, at which time the Defendants bought out Irvine's one-third interest in the Property on terms and conditions acceptable to them. The appointment order also contained a provision ordering Irvine to account to the Defendants for income and expenses related to the Property during the period of the receivership, and the Defendants have not identified any manner in which Irvine failed to comply with this order.

¶ 20 Under these circumstances, the Defendants suffered no harm from Irvine's appointment as receiver, and the issue has become moot upon the termination of the receivership. Thus, we will not disturb the trial court's appointment of Irvine as receiver of the Property even though that appointment was in error under rule 66. *See* Utah R. Civ. P. 66(b).

CONCLUSION

¶ 21 The trial court correctly determined that Craig retained a life estate in the Property until her death, and that after her death Irvine and each of the Defendants each took a one-third interest in the Property. The trial court erred in appointing Irvine, a party to this action, as the receiver of the Property because the Defendants did not consent to Irvine's appointment in writing. However, in

light of the short duration of the receivership, the Defendants' purchase of Irvine's interest in the Property, and the lack of suggestion of any harm to the Defendants, we determine that the error is harmless and the issue moot. Accordingly, we affirm the judgment below.

¶22 WE CONCUR: James Z. Davis and Gregory K. Orme, Judges.