# JANUARY TERM, 1897.

KENT FURNITURE MANUFACTURING CO. *v.* LONG.

111 383
f121 172
111 383
124 411

1. EASEMENTS—CONSTRUCTION OF GRANT.

   A perpetual right of way over a railroad track and the land upon which it is laid, appurtenant to the mill of the second parties, is granted by an instrument by which the first parties, for a cash consideration, grant and release to the second parties, "their heirs and assigns, forever," the undivided half of a side track or railroad which is used by the second parties in connection with their mill, and which, under the contract, is to be kept in repair by the parties jointly, and is not to be removed without the written consent of all the parties.

2. SAME—SUBSTITUTED AGREEMENT—STATUTE OF FRAUDS.

   A parol agreement by the servient owner to allow to the dominant owner, in consideration of a release by the latter of his rights in the track as originally laid, a corresponding interest in a new track to be constructed a short distance away, is so far performed as to be taken out of the statute of frauds, where the dominant owner consents to the removal, and continues to use the track as reconstructed.

Appeal from Kent; Grove, J. Submitted June 12, 1896. Decided January 5, 1897.

Bill by the Kent Furniture Manufacturing Company and the Chicago & West Michigan Railway Company against George H. Long, individually and as executor of the will of Arthur B. Long, deceased, to restrain the prosecution of an action in ejectment. From a decree dismissing the bill, complainants appeal. Reversed.

*Taggart, Wolcott & Ganson* and *Smiley, Smith & Stevens*, for complainants.

*Albert Crane*, for defendants.

LONG, C. J.   The bill filed in this case asks for an injunction restraining defendants from prosecuting an ejectment suit brought to compel the railway company to remove its tracks from lands described in the bill, and to surrender possession thereof to plaintiffs in ejectment (defendants herein).   In 1869, the firm of A. B. Long & Sons owned and operated a sawmill on the west bank of Grand river, in the city of Grand Rapids, and had constructed a side track from the Grand Rapids & Indiana Railroad to its mill.   The firm of Wonderly & Co. also built a mill south of the Long mill, and the two mill companies entered into a contract, whereby Wonderly & Co. became the owner of an undivided half of this side track, the monetary consideration being $1,950.83.   In 1876, Wonderly & Co. was adjudged bankrupt, and it ceased to operate its mill or use the track.   In 1880, Joseph H. Wonderly, who had acquired all the interests of Wonderly & Co., gave a bill of sale of a large amount of personal property, including this side track, to the Kent Furniture Manufacturing Company.   This was followed in 1895 by a quitclaim of the same property from Wonderly to the Kent Company.   By successive business changes and death, the firm of A. B. Long & Sons is now represented by George H. Long, executor, and George H. Long, individual.

In 1877, the Detroit, Grand Haven & Milwaukee Railway Company put in a side track to the Long mill, and from that time Long & Sons ceased to use the old track.   In 1882, Long & Sons gave the Chicago & West Michigan Railway Company oral license to lay a side track to its mill, and the track was laid, part of it being over the same right of way as the old side track of 1869.   The rest of the track was laid upon the private lands of Long & Sons.   The Kent Furniture Manufacturing Company alleges that Long & Sons requested it to consent to the laying of this track, representing that if such change were made, the railway company would keep

the track in repair, and the Kent Furniture Manufacturing
Company would have the same rights as in the old
track.   The furniture company consented to this ar-
rangement.   This entire agreement was by parol.   In
1891, Long & Sons wound up its business, and gave
the Chicago & West Michigan Railway Company notice
to quit.   The company did not do this, and defendants
brought ejectment, in 1894.

The complainant furniture company alleges that it
should have the same right in the new track as in the
old, and to its use as long as desired; that the railway
company was to keep the track in repair, and that, rely-
ing upon the representations made, complainant rail-
way company laid the track at an expense of several
thousand dollars, and the furniture company invested
large sums in its plant; that defendants should be for-
ever absolutely barred from interfering with complain-
ants' use of this track.   The defendants answer, and
say that they own the lots occupied by the side track
in fee simple; that neither complainant has the right
to use or maintain the track; that the firm of A. B.
Long & Sons was dissolved in 1878, the firm of Wonderly
& Co. in 1876, and that the track was wholly abandoned
after 1877; that complainant railway company laid its
track under parol license, which has been revoked, and is
estopped from denying the right and title of these de-
fendants, its licensors; that, under the agreement of
1869, A. B. Long & Sons did not convey any right of
way across the lots occupied by the track; that the license
to use the track under the agreement of 1869 was revoked
by the dissolution of the two original firms, in 1876 and
1878; that the interest of Wonderly & Co. was not as-
signable; that the furniture company was not a party to
the ejectment suit, and is not entitled to join in this action;
that complainants have not stated a case entitling them
to relief; and defendants claim the benefit of a demurrer.
Upon the hearing in the court below, a decree was en-

tered in favor of defendants, from which decree complainants appeal.

The contract between A. B. Long & Sons and Wonderly & Co. recites the consideration, the fact that Wonderly & Co. was erecting a sawmill south of the Long mill, and then provides that—

"The said parties of the first part, for and in consideration of the sum of $1,950.83, to them in hand paid by the said parties of the second part, * * * do, by these presents, grant, bargain, sell, remise, release, alien, and confirm unto the said parties of the second part, their heirs and assigns, forever, the undivided one-half of the said side track or railroad; to have and to hold the said side track to the said parties of the second part, their heirs and assigns, to the sole and only proper use, benefit, and behoof of the said parties of the second part, their heirs and assigns, forever." ·

The contract also provides that each party should bear one-half of the expense of keeping the side track in repair at all times, and that either party might at any time construct switches from such track to either of their mills or yards, and that the side track should be used in common so long as either party should desire to use the same, and should not be moved without the written consent of all the parties. The contract was signed and sealed, in the presence of a witness, November 22, 1869, by all the members constituting the two firms. The track at that time extended across several lots owned by A. B. Long & Sons, as copartners. The contract contemplated the use of the track, and the right granted to be appurtenant to the Wonderly mill and plant, and the right retained to be appurtenant to the mill and plant of Long & Sons, and also contemplated a long-time use. It was the expressed intention of the parties that the second parties, their heirs and assigns, should have such use forever, qualified only by the proviso that if such parties, their heirs or assigns, should not wish the further use of the way at any time, then it might cease.

The contention of the defendants that this writing was a mere license cannot be sustained, either upon reason or authority. It was the evident intent of Long & Sons, by the conveyance of the track, that the right of way should be continuous over the land occupied by the track. The track was already laid, and there is no indefiniteness as to the land. The contract conveyed an interest in land appurtenant to the mill, to which property the complainant furniture company acquired title by a writing executed by Joseph H. Wonderly, the surviving member of the firm of Wonderly & Co. The court below held, in effect, that the contract of November 22, 1869, did not create an easement, and was but a license revocable at will. In the determination of that question, the court may look, not only at the contract, but the surroundings of the parties and the situation of the properties affected. At the time of the execution of the contract, Wonderly & Co. was erecting a mill south of the Long mill. An extensive business was to be carried on, not only by Long & Sons, but by Wonderly & Co., and the business of these mills could not very well be conducted without the aid of this side track. The parties undertook to make an agreement that would be binding upon each, and for the benefit of the mill properties. Long & Sons was getting nearly $2,000 in cash, and an agreement by Wonderly & Co. that it would meet half the expense for keeping it in repair; while Wonderly & Co. was getting the right of way to its mill over a side track, which easement was to continue forever, unless it should give its consent in writing that the track might be discontinued. The conveyance was to Wonderly & Co., "their heirs and assigns, forever." The granting of the side track carried with it the use of the land upon which it was laid. When the use of anything is granted, everything is granted necessary to the enjoyment of such use. Washb. Easem. (3d Ed.) pp. 46, 47. The right of way, under the circumstances here stated, was not intended to be limited to the grantees in person, but was to their heirs and

assigns. An easement or servitude created by deed is never presumed to be personal or in gross when it can be fairly construed to be appurtenant to some other estate. *McMahon* v. *Williams,* 79 Ala. 288; Washb. Easem. pp. 40–42; *Spensley* v. *Valentine,* 34 Wis. 154. In *McMahon* v. *Williams, supra,* it was said:

"The inquiry in these cases [where land is conveyed in parcels to several purchasers, subject to restrictions with reference to the use of the premises conveyed] has generally been whether the servitudes or restrictions imposed were of such a nature as to operate as an inducement to purchasers, and, if so, the inclination of the courts has been to construe them as appurtenant to the estate, and intended for its protection, rather than as personal to the grantor. If appurtenant, it, of course, follows the land, being assignable with it, and each grantee can enforce it in equity against each other grantee having notice of it;" citing *Sharp* v. *Ropes,* 110 Mass. 381; *Whitney* v. *Railway Co.,* 11 Gray, 359 (71 Am. Dec. 715); *Inhabitants of Winthrop* v. *Fairbanks,* 41 Me. 307.

In *Peck* v. *Conway,* 119 Mass. 549, the court said:

"The question whether such an easement is a personal right, or is to be construed to be appurtenant to some other estate, must be determined by the fair interpretation of the grant or reservation creating the easement, aided, if necessary, by the situation of the property and the surrounding circumstances."

See, also, *Fitch* v. *Hydraulic Co.,* 44 Mich. 74.

We think that Wonderly & Co. took a perpetual right of way over this track for the use of its mill, and that it was such a right in the land as Wonderly & Co. could and did convey to the Kent Furniture Manufacturing Company. The claim that this right was ever abandoned in any way is not sustained by the proofs.

In 1882, as has been said, the track, or a portion of it, was moved for a distance by Long & Sons. Complainant furniture company claims that this was by its consent, and upon an agreement by Long & Sons that the rights of the furniture company in the side track and easement

would not be changed by the slight alteration thus to be made.   The proofs sustain the claim made that such track was moved over upon this agreement and understanding.   Counsel for defendants contends, however, that this last track was laid under a parol license, and therefore revocable at the will of the licensor.   But it appears that a part of the old track was used, and that the old right of way is rendered useless to the complainant.   The parties continued to use the new track up to the time when the notice was given to the railway company to remove it, and without any objection on the part of Long & Sons.   It would be a gross fraud upon the complainant, under these circumstances, if the defendants should be now permitted to set up the statute of frauds to evade the contract made in 1882.   Not only Wonderly & Co., but the Kent Furniture Manufacturing Company, have expended large sums of money in improving this property, and the last-named company has invested over $200,000 in its plant, and apparently in reliance upon its rights in this side track.   We think, however, that the contract is not void under the statute of frauds.   The complainant furniture company had the right to the use of the track as it was originally laid; and so long as it operated its plant, and desired the use of the track, it could not be divested of it.   In consideration of its agreement to release its rights in the old track, the defendants agreed that it might have the same use of the track then to be laid in place of it.   The complainant furniture company carried out its part of the agreement; but, when it attempted to assert its right in the new track, the defendants set up the claim that, the arrangement resting in parol, the complainant could not enforce it.   No such defense can be permitted.   The complainant furniture company has performed on its part, and has the right to insist that defendants be compelled to specifically perform on their part.   The rule is well settled in this State that where, under an agreement to convey land, the purchase money has been paid, and possession has been

taken, these acts of part performance are sufficient to take the case out of the statute of frauds, and to entitle the purchaser to a decree for specific performance. *Farwell* v. *Johnston*, 34 Mich. 342; *Twiss* v. *George*, 33 Mich. 253; *Burtch* v. *Hogge*, Har. Ch. 31; *Putnam* v. *Tinkler*, 83 Mich. 628; *Canham* v. *Mooney*, 73 Mich. 184. Here there was a sufficient consideration by the surrender of the old track and the rights which the complainant had therein; and the defendants are bound now to recognize all the rights in the new track which complainant had in the old.

The decree of the court below must be reversed, and a decree entered here in accordance with the prayer of the bill. Complainants will recover their costs of both courts.

Montgomery, Hooker, and Moore, JJ., concurred. Grant, J., did not sit.