*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS HAAN, CONNIE HAAN, KRISTIN
BROOKS, and JILL RHODES,

UNPUBLISHED
January 16, 2020

Plaintiffs/Counterdefendants-
Appellants,

and

No. 345282
Allegan Circuit Court
LC No. 17-057955-CH

WILLIAM RHODES, CASEY ALLEN, LAURA
ALLEN, TRAVIS STEPHENSON, MARCIANN
STEPHENSON, KEVIN MARCY, and SUSAN
MARCY,

Plaintiffs/Counterdefendants,

v

LAKE DOSTER LAKE ASSOCIATION,

Defendant/Counterplaintiff-
Appellee.

Before: MURRAY, C.J., and MARKEY and BECKERING, JJ.

PER CURIAM.

Plaintiffs Thomas and Connie Haan, Kristin Brooks, and Jill Rhodes (appellants) appeal by right the trial court's order granting summary disposition in favor of defendant Lake Doster Lake Association (LDLA) under MCR 2.116(C)(10). The trial court's order also denied appellants' competing motion for summary disposition brought under MCR 2.116(C)(10). We reverse and remand for entry of judgment for appellants.

In the 1960s, the Lake Doster Development Company (developer) created Lake Doster, a man-made lake in Allegan County, and developed the surrounding property. There were several platted subdivisions in the overall development, including the Sheltered Bay Subdivision (the subdivision). The plat for the subdivision included a dedication of a lakefront parcel for lot owners who did not have lake frontage—backlot owners— to provide them with access to and

-1-

use of the lake. The dedicated parcel was called Parkway, and it consisted of a private drive and park. The plat dedication made no mention of riparian rights or the right to erect docks. Appellants are backlot owners in the subdivision. The developer recorded various covenants and restrictions, some of which concerned the erection of docks. If a lot owner wished to erect a dock, he or she was required to obtain approval from the developer's Building Control Committee. The subdivision covenants and restrictions, which ran with the land, also specified that lakefront property owners did not have riparian rights. Backlot owners, including appellants or their predecessors, obtained permission to erect docks adjacent to the Parkway lot and to moor their boats to the docks. They maintained and cared for their docks over the years. When backlot owners bought and sold their properties, the dock connected or linked to a particular lot was encompassed by the conveyance; a dock was effectively appurtenant to its related lot.

In 2005, LDLA was formed as a nonprofit homeowners association for the purpose of administering and governing the rights and responsibilities of subdivision lot owners. By warranty and quitclaim deeds, the developer conveyed to LDLA its property rights and interests in Lake Doster and the subdivisions, which included ownership of the lake, the lake bottom, and the land to the high watermark of the lake, along with any interest held in the land where the developer's dam, beach, roads, and parks were located. This transaction covered the Parkway lot. Under an assignment agreement that was also executed, the developer assigned to LDLA its rights to permit or restrict use of the lake and parks and its dock and mooring rights. Bylaws were adopted by LDLA that governed the use and enjoyment of the lake and common areas.

After the formation of LDLA, it sought the submission of membership applications in the LDLA from subdivision lot owners. LDLA drafted a document that it called an application for membership and statement of declarations, which we shall refer to as the "membership agreement." The membership agreement provided in part as follows:

> The Applicant desires the Property's present and future owners to have access and use of certain lands owned by the Association, including but not limited to, Lake Doster, . . . the private drive known as Parkway Drive and the private park[] known as Parkway . . . . To that end, the Applicant hereby agrees and acknowledges that upon admission and receipt of membership, this instrument shall be recorded with the Allegan County Register of Deeds and all previous rights and interests of all kinds and nature enjoyed by the Applicant in the Association Property shall be relinquished and quitclaimed to the Association. Upon acceptance of this Application for Membership . . ., *the Association agrees to allow the Applicant and all future owners of the Property to continue all past permitted rights of the Association Property*, provided that the Applicant and all future owners of the property abide by the Bylaws, Plat Restrictions and all rules and regulations adopted by the Association from time to time. Title to the Association Property shall at all times remain vested in the Association *subject to*

*the rights of use and enjoyment provided above* and granted elsewhere to other Members of the Association. [Emphasis added.[1]]

Docks are not explicitly mentioned in the membership agreement. Appellants submitted their executed membership agreements, which were accepted and recorded by LDLA, and appellants became LDLA members. The parties moved forward in accordance with the membership agreements for many years.

In 2014, LDLA became involved in a dispute regarding the placement of a dock by a non-party lot owner, which ultimately was the impetus for LDLA and its Building Control Committee to examine the issue of dock placement in connection with backlot owners and the Parkway lot. Beginning in 2015, LDLA contacted appellants and the other plaintiffs concerning the prospect of removing, adding, adjusting, and realigning docks, which appellants vehemently resisted. In March 2017, LDLA proposed the Parkway Park Dock Alignment Plan (the dock plan). The dock plan required different spacing between docks, the removal of two existing docks, the installation of one new dock, and the sharing of docks by backlot owners with other owners. Plaintiffs commenced this lawsuit to prevent LDLA's implementation of the dock plan, arguing that LDLA exceeded the scope of its authority by attempting to revoke and impair vested rights in plaintiffs' respective docks and boat moorings.[2] LDLA filed a counterclaim for declaratory judgment, requesting the trial court to declare the dock plan valid and enforceable and to order backlot owners to comply with LDLA's efforts to implement the dock plan.

Plaintiffs and LDLA filed competing motions for summary disposition under MCR 2.116(C)(10).[3] The trial court denied plaintiffs' motion for summary disposition and granted summary disposition in favor of LDLA. The trial court determined that LDLA solely owned the lake, the lake bottom, and the land to the high watermark, and that LDLA exclusively held all riparian rights in relation to the lake, which included docking rights. The court further concluded that "[a]t no time were any rights other than 'use' granted to anyone who owned or owns property on or near Lake Doster." The trial court found that the dedication of the Parkway lot to backlot owners did not grant them any rights to the land, rights to the lake, or riparian rights.[4]

---

[1] LDLA sent prospective members a variety of correspondence before requesting signatures on the membership agreements. In one letter to lot owners, LDLA stated: "Only those Eligible Members who accept their opportunity to become LDLA Members will enjoy boat and dock rights for their use and assignment to their property and can transfer those rights to successive owners if the property is sold." In a membership meeting handout, LDLA indicated that membership rights and privileges would include converting "many previous USES into Irrevocable RIGHTS."

[2] Appellants were joined by other plaintiffs in pursuing the litigation, but those plaintiffs have chosen not to participate in this appeal.

[3] The trial court had earlier denied a motion for summary disposition brought by LDLA under MCR 2.116(C)(8).

[4] The trial court noted that even lakefront owners were not granted riparian or dock rights.

The court observed that all owners—lakefront and backlot—had to obtain approval from the Building Control Committee to erect a dock. And the developer conveyed to LDLA the interest in controlling dock rights. The trial court further ruled:

> The membership application agreement guarantees property owners that they will "continue all past permitted rights" in the parks and lake. However, this document conveys no property rights and contains no mention of docks. The transfer of a riparian right cannot be implied or created; it must be conveyed. Furthermore, any purported conveyance must satisfy the statute of frauds, which the application cannot do because it was not signed by a representative of the association. It is clear, therefore, that the "past permitted rights" being guaranteed in the membership application agreement are only those that were already legally possessed by the property owners; the dedicated use of Parkway Park and the permitted use of Lake Doster, subject to the oversight and regulation of the developer/association.

The trial court indicated that "[d]espite the somewhat relaxed and informal methods that were described as previously employed by the [developer] to approve docks or the continued use of informal methods by LDLA; that practice does not prevent the LDLA from applying more rigid standards to docks maintained in the lake and requiring members to adhere and comply with them." The court stated that the bylaws did not require LDLA to obtain the assent of lot owners to implement the dock plan. This appeal ensued.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). We also review de novo the proper interpretation and application of a contract. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

Summary disposition under MCR 2.116(C)(10) is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion brought pursuant to MCR 2.116(C)(10) tests the factual support for a party's action. *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Pioneer State*, 301 Mich App at 377. A court may only consider substantively admissible evidence actually proffered by the parties. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). "Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties[;] [t]o this rule all others are subordinate." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). In light of this rule, "[i]f the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is ambiguous, testimony may be taken to explain the ambiguity." *New Amsterdam Cas Co v Sokolowski*, 374 Mich 340, 342; 132 NW2d 66 (1965); see also *Rory*, 473 Mich at 464 ("In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument."); *Frankenmuth Mut Ins Co v Masters,* 460 Mich 105, 111; 595 NW2d 832 (1999).

LDLA drafted the membership agreements; it received and accepted them after execution. LDLA sent them to the Allegan County Register of Deeds for recordation, and the agreements were then returned to LDLA. LDLA expressly agreed to allow appellants "to continue all past permitted rights of the" LDLA property. This is an enforceable provision as a matter of contract law.[5] Additionally, even assuming that the membership agreement is not a binding contract, we note that the "past permitted rights" provision would be enforceable under the doctrine of promissory estoppel.[6] The membership agreement is a valid instrument concerning rights and interests in real property. To the extent that there is an argument that the "past permitted rights" provision is unenforceable, it is wholly without merit.

The lakefront and backlot owners did not obtain riparian rights under the plat and dedication, under the covenants and restrictions, under the transfer and conveyance of rights and interests from the developer to LDLA, or under the membership agreements. Accordingly, any claim that riparian rights can serve as the basis to continue the existing placement and use of a dock necessarily fails.

Next, under the plat dedication, backlot owners acquired the right to utilize Parkway to access and use Lake Doster, but it did not give them the right to erect and maintain permanent docks. See *Thies v Howland*, 424 Mich 282, 288; 380 NW2d 463 (1985) (nonriparian lot owners

---

[5] "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). The membership agreement is plainly a valid contract, easily satisfying all five elements. Because LDLA's secretary drafted the membership agreements, as specifically stated at the end of the agreements, and that LDLA accepted and recorded the agreements, we find no violation of the statute of frauds, MCL 566.106 and MCL 566.108. And even were there a statute of frauds problem, part or full performance of the agreements removed the case from the statute. See *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 540; 473 NW2d 652 (1991).

[6] "The elements of a promissory estoppel claim consist of (1) a promise (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee and (3) that, in fact, produced reliance or forbearance of that nature (4) in circumstances requiring enforcement of the promise if injustice is to be avoided." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008).

who gain access by dedication to a lake have the right to use the surface of the water in a reasonable manner for such activities as boating, fishing, and swimming, including the right to temporarily anchor boats). Through the dedication, subdivision backlot owners were effectively granted and obtained an *easement* over Parkway to access and use the lake. See *Little v Hirschman*, 469 Mich 553, 560-562; 677 NW2d 319 (2004) (a dedication of land for private use in a recorded plat gives lot owners an easement to use the privately-dedicated land).

Despite the limitations of the dedication with respect to erecting docks, the covenants and restrictions gave all subdivision lot owners the opportunity to go to the developer's Building Control Committee and seek permission to erect a dock. Specifically, the covenants and restrictions provided that "[n]o dock . . . may be erected without approval of the Building Control Committee." Thus, although there was no "right" to erect a dock under the plat dedication, there was a "right" to make a request to erect and maintain a dock under the covenants and restrictions. Here, appellants or their predecessors in title did indeed obtain the necessary permission to erect and maintain their docks adjacent to the shores of Lake Doster and secured to the lake bottom.[7] We view the approvals by the developer or LDLA as expanding the existing use and access easements originally created by the plat dedication to now encompass the erection and maintenance of those approved docks. See *Dyball v Lennox*, 260 Mich App 698, 706; 680 NW2d 522 (2004) (the law allows the owner of riparian property to grant an easement to backlot owners to enjoy rights that are traditionally regarded as exclusively riparian).[8] Accordingly, when requests by subdivision backlot owners to erect docks on Lake Doster were approved, those owners acquired an easement interest or right in relation to erecting and maintaining their respective docks.[9] We note that "[w]henever possible, Michigan courts construe an easement as appurtenant and perpetual." 1 Cameron, *Michigan Real Property Law* (3d ed), Easements, § 6.22, p 232-233.

---

[7] The record indicated that the process of obtaining permission was extremely informal and that there was no documentation reflecting the approvals, which were oral. LDLA notes these matters and the lack of details surrounding the approvals but then states, "That is not to say that LDLA denies that permissive uses of Lake Doster were historically allowed by" the developer.

[8] A person with riparian rights has the right to erect and maintain a dock. *Thies*, 424 Mich at 288. An easement may grant a backlot, nonriparian owner the right to construct and maintain a dock. *Little v Kin*, 468 Mich 699, 701; 664 NW2d 749 (2003).

[9] We recognize that an easement constitutes an interest in real property that is subject to the statute of frauds when granted or conveyed. *Kitchen v Kitchen*, 465 Mich 654, 659; 641 NW2d 245 (2002). But as discussed earlier, part performance removes an oral agreement from the statute of frauds. See *Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 540; 473 NW2d 652 (1991); see also *Kent Furniture Mfg Co v Long*, 111 Mich 383, 389-390; 69 NW 657 (1897). For many years, without objection or interference from the developer or LDLA and consistent with the covenants and restrictions, appellants and their predecessors enjoyed and maintained their docks and conveyed them in association with sales of the related backlots.

LDLA argues that the dock-construction approvals created, at most, oral licenses that were not permanent and could be revoked at will. A license arises when the owner of land gives permission to another person to do some act on the land without that person acquiring any permanent interest in the owner's land; "a license is revocable at will and is automatically revoked upon transfer of title by either the licensor or licensee." *Kitchen v Kitchen*, 465 Mich 654, 658-659; 641 NW2d 245 (2002). Here, the very history of the subdivision and the treatment of the docks established that more than mere licenses had been granted, otherwise, every time a backlot that had a dock was conveyed, the new owner would have been required to seek and obtain approval anew to retain dock privileges . Instead, backlots were conveyed along with the docks connected to them: the docks were appurtenant to the lots.[10] We also note that even if mere licenses were created when permission was given to erect and maintain docks, the "past permitted rights" provision in the membership agreements allowed the applicants "and all future owners" to continue exercising such rights, which would have effectively converted the licenses into written easements. In fact, even if the backlot owners' rights to erect and maintain docks, as garnered by permission and as existed before the membership agreements were finalized, could not be properly be characterized as license or easement rights, the "past permitted rights" provision converted those rights into written easements.[11]

LDLA cites *Ashley v Waite*, 33 Mich App 420; 190 NW2d 370 (1971), and *Winans Lake Hills Corp v Moon*, 284 Mich 688; 280 NW 81 (1938), for the proposition that the permission given by the developer to allow the construction and maintenance of the docks was subject to alteration and revocation and could not ripen into a permanent right. We first note that this argument does not acknowledge that there is a dearth of evidence of any attempt to alter or revoke appellants' permitted rights to maintain their docks before the parties entered into the membership agreements, nor does the argument recognize that the membership agreements subsequently memorialized the right to maintain the docks and made the right irrevocable.[12] Moreover, *Ashley* and *Winans Lake* were cases addressing adverse possession and simply indicated that while permitted use of land cannot ripen into title by adverse possession, the

---

[10] LDLA contends that if the approvals to erect and maintain docks were permanent in nature and created vested rights, there would have been no need for the "past permitted rights" provision in the membership agreement. This argument fails to appreciate the language in the membership agreement that provided that "all previous rights and interests of all kinds and nature enjoyed by the Applicant in the Association property shall be relinquished and quitclaimed to the Association." The "past permitted rights" language was needed to retain the easement rights and interests to lake access, lake use, and to erect and maintain docks on the lake.

[11] In LDLA's brief on appeal, it even referred to the "previous permissive *right*" of appellants to erect docks, although LDLA also argued that the "right" could be altered or revoked. (Emphasis added.)

[12] LDLA argues that the membership agreements do not refer to "docks." We note, however, that the membership agreements also do not refer to lake use or access, but there can be no doubt that the "past permitted rights" language encompassed lake use and access rights.

permission can be revoked, and the clock on adverse use restarted. See *Winans Lake*, 284 Mich at 691 ("The court . . . is of the opinion that the evidence does not show the legal elements necessary to establish an adverse user of the lake's waters by defendants for boating and fishing, but rather the court is inclined to the opinion that such use of the lake made by the defendants was by permission of the plaintiffs and their predecessors in title."); *Ashley*, 33 Mich App at 422 (use of land by permission can never ripen into title by adverse possession, and a conveyance of property by the person granting the permission operates to revoke the permission). Accordingly, *Ashley* and *Winans Lake* are distinguishable and of no relevance to our analysis.

The membership agreement provided that LDLA agreed to allow the continuance of "all past permitted rights," and given the permission the developer or LDLA granted in the past regarding docks, appellants or their predecessors obtained an easement right to erect and maintain their docks on LDLA's real property, which appellants are entitled to continue under the membership agreements. Alternatively, as explained above, the membership agreements created an easement right by appellants to continue maintaining their docks. The question becomes whether the dock plan LDLA sought to implement can be characterized as being inconsistent with appellants' continuation of their existing rights to maintain their docks. The inconsistency must be significant enough to actually reflect an impairment of or interference with existing dock easement rights. For example, if LDLA adopted a requirement that flotation devices be kept on every dock, it could not be concluded that LDLA was not allowing a backlot owner to continue his or her past permitted rights.

Again, the dock plan required different spacing between docks, the removal of two existing docks, the installation of one new dock, and for the backlot owners to share docks with other owners. Although the need to slightly move a dock for a required spacing change between docks would likely not amount to an inconsistency with appellants' existing easement rights to maintain docks, we conclude that forcing appellants to share their docks with another lot owner would sufficiently diminish, impair, and interfere with appellants' rights to maintain their docks such that an inconsistency with rights would arise. Appellants have full and exclusive use and enjoyment of their docks, and the dock plan would substantially limit that use and enjoyment. Accordingly, the dock plan cannot be implemented without violating the "past permitted rights" provision in the membership agreements. Therefore, the trial court erred by granting summary disposition in favor of LDLA and by denying appellants' motion for summary disposition.

We must address an additional argument posed by LDLA. The membership agreement provided that the authorization to continue past permitted rights was subject to the applicant's and all future owners' abiding "by the Bylaws, Plat Restrictions and all rules and regulations adopted by [LDLA] from time to time." On the basis of this language, LDLA argues that past permitted rights "are subject to the future regulation and limitations to be put in place by" LDLA and that there is no language in the membership agreement "that would strip LDLA of its rights to determine where and when access to Lake Doster would be granted, including for the placement of docks." To be clear, we are not holding that LDLA cannot engage in any

regulation and oversight of appellants' docks, as reflected by our flotation-device example.[13] Although appellants remain subject to the bylaws, plat restrictions, and properly adopted rules and regulations, LDLA cannot employ those authorities and mechanisms to essentially eviscerate and render meaningless its agreement to allow subdivision backlot owners to continue enjoying their past permitted rights to maintain their docks. We have concluded that the dock plan's requirement that appellants share docks sufficiently impairs or interferes with existing dock easement rights such that the dock plan cannot be sustained and implemented. LDLA's future actions and plans will have to be examined on a case-by-case basis to assess whether they conflict with the membership agreement and easement rights to maintain docks.[14]

We reverse and remand for entry of judgment in favor of appellants. We do not retain jurisdiction. Having fully prevailed on appeal, appellants may tax incurred costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Jane M. Beckering

---

[13] Another example of a likely acceptable action would be if LDLA adopted requirements pertaining to electrical installations on docks.

[14] Appellants also contend that the trial court erred by failing to consider their right to submit a park plan and manage the Parkway lot in accordance with LDLA's bylaws. Appellants further argue that the trial court violated their procedural due process rights when it received the parties' cross-motions for summary disposition and then informed the parties that it had reached a decision on the basis of those motions and would not accept or consider additional briefs or filings, including responses. In light of our holding, we find it unnecessary to address these arguments, and appellants' former argument was also inadequately developed below and not encompassed by the relief sought in their complaint. We do note that with respect to motions for summary disposition brought under MCR 2.116(C)(10), the filing of a response with attached documentary evidence is not only permissible, it is mandatory and must be considered by the court. MCR 2.116(G)(4) and (5).